(58 App. Div. 588.)

### DOYLE v. CITY OF NEW YORK et al.

(Supreme Court, Appellate Division, Second Department.   March 8, 1901.)

**1. JUDICIAL NOTICE—COBBLESTONE—WATERSTONE.**
    The court will not take judicial notice that "waterstone" is the same as "cobblestone," since, if such be a material fact, it might be easily proven, and the absence of proof compels the examination of authorities to ascertain the fact.

**2. PAVEMENT—MATERIAL—REPAIR BY STREET RAILWAY.**
    Where a street-railway company has covenanted in its charter to keep the pavement within its tracks and within three feet from each side thereof in repair with the best "waterstone," it is not relieved of liability for injuries caused by its failure to do so by the fact that since the date of the charter the city has changed the material used in the surrounding pavement from waterstone to granite, since the material to be used in the pavement and repairs is only an incident of the primary feature of the covenant, which is to "keep the pavement in repair."

**3. SAME—INJURIES—RAILROAD LIABILITY.**
    Under Laws 1890, c. 365, § 98, requiring every street-railway company to keep in permanent repair that portion of the street between its tracks and two feet outside thereof, a street-railway company owes the public the duty to keep such portion of the pavement in repair, so that a person injured by its failure to do so may maintain a suit for damages against the company.

**4. SAME—NOTICE BY CITY.**
    Under Laws 1890, c. 365, § 98, requiring street-railway companies to keep in repair that portion of the pavement adjacent to their tracks, "under the supervision of the public authorities," and "when required by them to do so," the fact that the city authorities have not notified or requested the company to make repairs in a pavement does not relieve the company from liability for injuries caused by defects therein.

Appeal from trial term, Kings county.

Action by John Doyle, an infant, by Michael Doyle, his guardian ad litem, against the city of New York and another. From a judgment in favor of plaintiff, defendants appeal. Affirmed.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCHBERG, JENKS, and SEWELL, JJ.

William J. Carr, for appellant city of New York.
John L. Wells, for appellant Brooklyn Heights R. Co.
James C. Cropsey, for respondent.

GOODRICH, P. J. The action is for damages for personal injuries arising from the failure of the defendants to keep a public street in good repair. The plaintiff was riding upon (but not driving) a large brewery truck on Myrtle avenue, Brooklyn, when the forward wheel sank into a rut or hole between the street surface railroad tracks, throwing the driver off the truck, and toppling over a cask of beer upon the plaintiff's foot, the great toe of which was so injured as to compel its amputation. The plaintiff had a verdict against both defendants, and both appeal.

The contest arises upon the question whether the city, or the company, or both, is responsible for the condition of the street; for it seems to be generously conceded by each of the defendants that the other is liable. There is, however, no necessity for a concession that the accident happened through the neglect of a duty incumbent upon the defendants, as there was abundant evidence to support the finding of the jury in that respect.

The claim of the city is that the company is solely responsible, on either of two grounds:

First. The Brooklyn City Railroad Company, the predecessor in interest of the Brooklyn Heights Railroad Company, in 1853 obtained the franchise to lay its tracks, upon a covenant reading:

"The pavement to be kept in thorough repair by the said company within the tracks, and three feet on each side thereof, with the best waterstone, under the direction of such competent authority as the common council may designate."

Second. Section 98 of the railroad law (chapter 565, Laws 1890), which reads in part as follows:

"Every street surface railroad corporation so long as it shall continue to use any of its tracks in any street, avenue or public place in any city or village, shall have and keep in permanent repair that portion of such street, avenue or public place between its tracks, the rails of its tracks and two feet in width outside of its tracks, under the supervision of the proper local authorities, and whenever required by them to do so, and in such manner as they may prescribe."

The company concedes in its brief that:

"The obligation of the defendant, therefore, was to keep Myrtle avenue, at the point in question, in thorough repair with the best waterstone, meaning a cobblestone pavement, * * * and * * * that the railroad company did not maintain the pavement in thorough repair with cobblestone pavement."

There was evidence tending to show, and the jury have found, that the street was so much out of repair at the place in question as to have occasioned the accident, and it is unnecessary to consider any exceptions save those which arise out of the respective duties and obligations of the defendants.

The company contends that its covenant was only to repair the street with waterstone, because the street was paved with that material when the contract was made; that, as subsequently the street was paved with granite pavement, we must assume that the city did

the work; and that, as the city changed from cobblestone to granite, the duty of the company to repair at all was abrogated. It asks us to take judicial notice that waterstone is cobblestone. This is not such a fact, if it be a fact, as falls within the category of matters of which the court can take judicial notice. In Town of North Hempstead v. Gregory, 53 App. Div. 350, 65 N. Y. Supp. 867, we had occasion to consider the subject, and the opinion of Mr. Justice Jenks contains a reference to the authorities. Evidently, under the authorities there cited, the demand of the company that we take judicial notice that waterstone is cobblestone is not well founded. I cannot find the word "waterstone" in the Century Dictionary, while in the Standard Dictionary the following appears: "Waterstones. n. Geol. A division of the Keuper in England." The former authority defines "cobblestone": "A cobble or rounded stone; especially, such a stone used in paving;" and "cobble": "A stone rounded by the action of water, and of a size suitable for use in paving." But there is nothing more to indicate that the words "cobblestone" and "waterstone" are synonymous or interchangeable. In Brown v. Piper, 91 U. S. 37, 23 L. Ed. 200, cited by Mr. Justice Jenks in the Gregory Case, it is said (pages 42, 43, 91 U. S., and page 202, 23 L. Ed.):

"This power is to be exercised by courts with caution. Care must be taken that the requisite notoriety exists. Every reasonable doubt upon the subject should be resolved promptly in the negative."

This is accentuated in the present case. It would have been easy for the company to prove the supposed fact, if it deemed it essential to its defense. The absence of such proof compels an examination of lexicons and professional works to ascertain the fact. Under such circumstances, it cannot be said that we are called upon to take judicial notice. But this does not seem to be of very great importance. The primary feature of the railroad company's covenant was that the company would keep the pavement between the tracks "in thorough repair." The method of doing it and the material were secondary and incidental. The fact remains that the company did not repair the street with waterstone, as it might and could have done, or with any other material. In City of Brooklyn v. Brooklyn City R. Co., 47 N. Y. 475, this very contract was under consideration, and the court said (page 478):

"It must be quite susceptible of proof at any time that the state of repair in which the pavement has been kept was or was not thorough; that the repair was or was not throughout the prescribed extent of space; that it was or was not of the best waterstone. And when the plaintiff or defendant should have, respectively, established by proof the negative of either or the affirmative of all of these propositions, it would have shown a failure to perform, or a full performance of, this condition of the bond. There is nothing left by the contract so indefinite or uncertain, as to extent, as to time, as to mode, as to material, or as to place, as that there should be any reasonable doubt as to just when and where, and upon what, the defendant was called upon to act."

It makes no difference how the street was paved at the time of the contract, or whether a different pavement was subsequently laid by the city. The duty of the company was clear and positive. It was to keep the pavement between the tracks "in thorough repair." The company might use waterstone or any other material to perform its duty,

but the duty to keep 'in repair was imperative and emphatic. There was evidence tending to show that the street was not in thorough repair; that the rut or hole in question, as variously described by witnesses, was from 12 to 18 inches long, from 4 to 6 inches deep, and from 3 to 4 inches wide; that it was adjacent to the rail, and a danger to vehicles using the street; that it was necessary, after the accident in question, to pry the wheel out of the rut; that the rut had been there for months before the accident,—long enough to afford notice of its condition to both defendants; and that wheels of other wagons had previously gone in. The jury were justified in finding that the defendants had not fulfilled their duty of keeping the street pavement in ordinary good condition and repair.

In addition to the franchise covenant, I have quoted a part of section 98 of the railroad law. This requirement of that section was well within the power of the legislature, even though the statute was enacted after the company obtained its franchise. It was said in Mayor, etc., of City of New York v. Twenty-Third St. R. Co., 113 N. Y. 311, 317, 21 N. E. 60, 62:

"It [the legislature] may take away its franchise to be a corporation, and may regulate the exercise of its corporate powers. As it has the power utterly to deprive the corporation of its franchise to be a corporation, it may prescribe the conditions and terms upon which it may live and exercise such franchise. It may enlarge or limit its powers, and it may increase or limit its burdens."

In Conway v. City of Rochester, 157 N. Y. 33, 51 N. E. 395, it was held that the duty of keeping the portion of the street between the tracks of a street railroad in permanent repair is, by section 98 of the statute, not merely suggested or advised, but commanded, and that the party charged with the performance of the duty is specifically pointed out, viz. the street surface railroad company, and that the municipal authorities have no power to relieve the company from making the whole or any part of the needed repairs. The requirement of section 98 that the work of keeping the pavement in permanent repair, "under the supervision of the proper local authorities, and whenever required by them to do so, and in such manner as they may prescribe," does not relieve the company from making repairs until ordered so to do by the local authorities. That provision is for the benefit and protection of the city, and the company cannot shelter itself against its positive duty behind the failure of the city to order or supervise the repairs; for, as we have already said, the primary duty of keeping the pavement in repair is, both by contract and statute, devolved upon the company.

We are not now concerned with any question as to the right of the city to recover of the company the damages growing out of the accident, or with the result as between them of this litigation. It is sufficient here to say that both of the defendants were subject to the duty of keeping the pavement in such repair as to make it reasonably safe for persons lawfully using it, and both are liable to respond in damages for any injury resulting from a failure to do so.

I find nothing in the other exceptions to require reversal, and think the judgment and order should be affirmed, with costs. All concur.