(80 App. Div. 438.)

BINNINGER v. CITY OF NEW YORK et al.

(Supreme Court, Appellate Division, Second Department. March 20, 1903.)

1. MUNICIPAL CORPORATIONS—DEFECTIVE STREETS—PARTIES LIABLE.
    Laws 1890, p. 1112, c. 565, § 98, requiring every street railway company to keep in permanent repair the portion of the street between its tracks and two feet outside thereof, does not relieve a city from liability for injuries sustained by reason of a defect within such portion of the street due to its own negligence.

2. CONSTITUTIONAL LAW—IMPAIRING OBLIGATION OF CONTRACT.
    A street railway company's franchise, granted in 1853, and authorizing it to operate cars by horse power only, and imposing other primitive restrictions, required the company to keep the street within its tracks and three feet on each side thereof in repair with the best water stone, under the direction of the city. Laws 1884, p. 309, c. 252, § 12, authorized street railway companies to operate their cars by other than horse power, as might be determined on with the consent of the city. Section 9 required the companies to repair the portion of the street between its tracks under the supervision of the city authorities. Laws 1890, p. 1108, c. 565, § 90, provided that the act should apply to any corporation organized for the purpose of building and operating street railroads. Section 98 required every street railway company to keep in repair

---

¶ 1. See Municipal Corporations, vol. 36, Cent. Dig. § 1593.

the portion of the street between its tracks and two feet outside thereof, under the supervision of the city authorities. Section 100 provided for a change of motive power from horse to cable, electricity, etc. The company accepted the provisions enlarging its powers contained in these laws. *Held* that, as a corporation which accepts the privileges of statutes must also assume the burdens imposed thereby, the company was required to make repairs as required by the law of 1890, and that act was therefore not repugnant to Const. U. S. art. 1, § 10, forbidding any state from impairing the obligations of a contract, though the city demanded asphalt paving between the tracks and two feet outside thereof, instead of water stone.

Appeal from Special Term, Kings County.

Action by Ernest Binninger against the city of New York and the Brooklyn Heights Railroad Company. From a judgment for plaintiff, and from an order denying a new trial, defendants appeal. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, and HOOKER, JJ.

James McKeen, for appellant City of New York.

Charles A. Collin (I. R. Oeland, on the brief), for appellant Brooklyn Heights R. Co.

Isaac M. Kapper, for respondent.

WOODWARD, J. The plaintiff has established, to the satisfaction of the jury, that on the morning of the 29th day of December, 1900, he was driving a wagon loaded with newspapers along Court street, in the borough of Brooklyn, between Remsen and Joralemon streets, going south, and in attempting to pass a toolhouse, which had been erected in the street in front of a building in course of construction, his wagon wheel dropped into a rut in the pavement, breaking the axle and throwing him to the pavement, with serious injuries as a result. There is some contention that, the defects in the street being obvious, the plaintiff was guilty of contributory negligence, as a matter of law, in not seeing and avoiding the danger; but we are of opinion that, at most, there was a question for the jury, and the verdict must be conclusive here.

The appellant, the city of New York, urges that it is not liable because, under the provisions of section 98 of the railroad law, Laws 1890, p. 1112, c. 565, and the decisions of this court in Doyle v. City of New York, 58 App. Div. 588, 69 N. Y. Supp. 120, and Eckert v. City of New York, 59 App. Div. 611, 69 N. Y. Supp. 124, the duty is imposed upon the defendant the Brooklyn Heights Railroad Company to keep in repair that portion of the street between the rails and two feet outside of the rails, and that the holes which caused the accident were immediately adjacent to the tracks of the Brooklyn Heights Railroad Company. But the cases cited show that the city of New York may properly be held liable to persons injured through defects in its streets due to its own negligence, even though its contention is sound that the Brooklyn Heights' Railroad Company owed the city the duty of keeping that portion of the street in repair, which resulted in the accident complained of. The more difficult question to be determined is whether the Brooklyn Heights Railroad Company

is now charged with the duty of keeping the street in repair within its tracks and two feet outside, and upon this question the latter has submitted an elaborate brief, and urges that this court has erred in disposing of the cases above cited.

The theory of the Brooklyn Heights Railroad Company (hereafter referred to as the "Railroad Company") is that, as the successor to the rights of the Brooklyn City Railroad Company, under a lease bearing date February 14, 1893, its liability is limited to the provisions of what it terms a "franchise contract" with the former city of Brooklyn, made on the 19th day of December, 1853, and that, it having been made impracticable for it to conform to the provisions of that contract, it is protected by that provision of the Constitution which forbids any state to violate the obligation of a contract (section 10, art. 1, Const. U. S.), so that the provisions of section 98 of the railroad law, Laws 1890, p. 1112, c. 565, can have no bearing upon its duty with respect to the highways. This ingenious theory, urged with much apparent support of authority, is builded upon the clause of the so-called "franchise contract" which provides that the pavement is "to be kept in thorough repair by said company within the tracks and three feet on each side thereof, with the best water stone, under the direction of such competent authority as the common council may designate." The city of New York has within recent years provided for the paving of the street here involved with asphalt, and the railroad company urge that, as the city would not permit the use of "the best water stone," its duty to keep the street in repair under the terms of its franchise contract has been waived by the city, and it no longer owes any duty to keep the street in repair, and that section 98 of the railroad law, which attempts to impose this duty in a modified degree upon all street surface railroads, is unconstitutional as to this defendant, because its obligation to make repairs was limited, by the terms of its agreement with the city of Brooklyn, to repairs to be made with "the best water stone." It might be suggested that the obligation of the Brooklyn City Railroad Company was to keep the pavement in thorough repair with the best grade of paving material used in the construction of the highway, which happened, in 1853, to be water stone, and that the duty, as it related to third persons at least, was not confined to any particular material. But it is not necessary to predicate the decision upon this basis, as a comprehensive view of the law will show that the railroad company has no foundation on which it may stand to defeat the plaintiff's recovery in this action.

It is a primary rule of construction that statutes and other instruments must be so interpreted as to give effect to every part thereof, and leave each part some office to perform; and any construction which deprives any part of a statute or other instrument of effect and meaning, when it is susceptible of another interpretation, is wholly without support from any authority. People ex rel. Killeen v. Angle, 109 N. Y. 564, 575, 17 N. E. 413; People ex rel. Balcom v. Mosher, 163 N. Y. 32, 36, 57 N. E. 88, 79 Am. St. Rep. 552, and authorities there cited. If we read this so-called "franchise" contract, we shall find that it was made with reference to conditions then existing; that it confined the Brooklyn City Railroad Company to conditions from

which it could not be relieved without the intervention of the Legislature, which has, under the provisions of section 1 of article 8 of the state Constitution, reserved the power to alter and repeal all corporate laws; and that the changes in the statute which removed these limitations at the same time imposed the duties from which the railroad company now seeks to be relieved. It was provided by the franchise contract, among the "terms and conditions, to be observed, kept, and performed by the said company," that "the rails to be used shall be the improved grooved iron rails, laid even with the surface of the pavement, in such manner as shall not interfere with the passage of vehicles over the streets, and suitable bridges at all the gutters so as to permit the flow of water under the same; the rails to be laid on substantial sills of the best yellow pine timber, with the best chestnut cross-ties of suitable dimensions. * * * The cars to be of the most approved kind in style and finish, and of such sizes as shall be best adapted to the respective routes, to be propelled by horse power only. * * * No cars to be allowed to run on the Sabbath," etc. If there is a yard of rail laid upon "substantial sills of the best yellow pine timber" in the borough of Brooklyn today, it would be interesting to have it pointed out, and it has been many a day since any one has seen a horse-power car upon Court street, and a much longer time since there has been any limitation on Sabbath transportation over this street railroad; yet there has been no suggestion that the defendant railroad company has lost any of its rights by reason of its failure to comply with the conditions of its franchise contract. It was also provided by this franchise contract that on the Court street route the fare should not be to exceed 4 cents, with a license fee of $20. Thus it will be seen the Brooklyn City Railroad Company had only the powers of a primitive horse-car surface railroad under this franchise contract; it was tied down to the use of "substantial sills of the best yellow pine timber, with the best chestnut cross-ties of suitable dimensions," which was in entire accord with its covenant to keep the pavement in a thorough state of repair within the tracks and three feet outside of the same with "the best water stone;" and it harmonized with the provision that no cars were to "be allowed to run on the Sabbath." With this contract in force, and the Brooklyn City Railroad Company operating its cars under its provisions, as we may assume, the Legislature of this state enacted chapter 252, p. 309, of the Laws of 1884, entitled "An act to provide for the construction, extension, maintenance and operation of street surface railroads and branches thereof in cities, towns and villages." This act provided (section 12):

"Any street surface railway company may in any case operate any portion of its road by animal or horse-power, or by any power other than locomotive steam power, which may be consented to by the local authorities and by a majority of the property owners, obtained in accordance with sections three and four of this act."

This was the first act, so far as we discover, of a general nature enlarging the powers of street surface railroad companies in respect to the use of mechanical motive power.

Section 9 of the act provided:

"Every such corporation incorporated under, or constructing, extending or operating a railroad constructed or extended under the provisions of this act, within the incorporated cities and villages of this state, shall also whenever and as required and under the supervision of the proper local authorities have and keep in permanent repair the portion of every street and avenue between its tracks, the rails of its tracks and a space two feet in width outside and adjoining the outside rails of its track or tracks so long as' it shall continue to use such tracks so constructed under the provisions of this act."

In 1889 the Legislature amended section 12 of chapter 252, p. 313, of the Laws of 1884 by the enactment of chapter 531, p. 729, of the Laws of that year, and section 12 was made to read: "Any street surface railway company may in any case operate any portion of its railroad by cable or electricity, or by any power, other than locomotive steam power, instead of by animal or horse power, which may be approved by the State Board of Railroad Commissioners," etc.; and it was provided that "it shall be lawful for any such railroad company to make any changes in the construction of its road or road-bed at any time rendered necessary by a change in its motive power." The act did not amend the provision requiring the company to keep the pavement in repair.

In 1890 the Legislature enacted chapter 565 of the Laws of that year, known as the "Railroad Law." By section 90, p. 1108, of this act it was made to apply to any "corporation organized for the purpose of building and operating or extending a street railroad or any of its branches, for public use in the conveyance of persons and property in cars for compensation, upon and along any street, avenue, road or highway," and section 98, p. 1112, provided:

"Every such corporation so long as it shall continue to use any of its tracks in any street, avenue, or public place in any city or village, shall have and keep in permanent repair that portion of such street, avenue, or public place between its tracks, the rails of its tracks, and two feet in width outside of its tracks, under the supervision of the proper local authorities, and whenever required by them to do so, and in such manner as they may prescribe."

Section 100, p. 1113, of the same act provided for a change of motive power from horse to cable, electricity, or other power, with the exception of steam locomotive power. The law was again amended by chapter 676, p. 1382, Laws 1892, and was still further amended by chapter 434, p. 908, Laws 1893, and by chapter 933, p. 791, Laws 1895, but without material changes in so far as the provisions in reference to keeping the pavements in repair and the changing of motive power are concerned. There has been no time since 1884, therefore, when the law has permitted the Brooklyn City Railroad Company to change its motive power, that this privilege has not been coupled with the duty of keeping the highway in repair in substantially the manner now provided by section 98 of the railroad law, Laws 1890, p. 1112, c. 565, and we know no rule of law which permits a corporation to avail itself of the privileges of a statute without at the same time assuming the burdens which the law imposes. This court may take judicial notice of the fact that the Brooklyn Heights Railroad Company is now operating its lines by electricity, and that the change in motive power from horses to the power now in use has been made since 1884, and under the provisions of the statutes to which we have

called attention. These statutes have relieved the railroad company from the petty restrictions contained in the franchise contract, and these enlarged privileges have been accepted and acted upon, entailing the obligation of discharging the duties prescribed by such statutes. It is difficult to understand, conceding that asphalt is more expensive than water stone, how the railroad company can be seriously disadvantaged by a provision of the statute that it shall keep the pavement between its tracks and two feet outside in repair under the direction of the local authorities, in place of the old provision that it should keep a space of three feet outside in repair with the best water stone. It has an advantage of two running feet along its tracks over the old contract, which ought to compensate in a large measure at least for the added cost.of asphalt by the square yard. This is not of importance in the disposition of the question, but is suggested as showing that from an equitable standpoint the railroad company has no valid cause for complaint.

The judgment and order as against both defendants should be affirmed, with costs. All concur.