LAUGHLIN, J.  The lien was filed on the 25th day of July, 1906. Two days prior to the expiration of the time within which the lienors were required by the statute (Lien Law, Laws 1897, p. 522, c. 418, art. 1, § 17) to commence an action to foreclose the lien, they obtained an order from the Special Term of the Supreme Court, pursuant to said section, continuing their lien for 60 days, and granting them 60 days' additional time within which to commence an action to foreclose it.  A motion was subsequently made to vacate the order, upon the ground, among others, that the court was misled or deceived. Pending this motion the lienors began an action to foreclose the lien. The contractors then applied for an order canceling the lien, upon the ground that more than three months expired after the lien was filed before an action to enforce it was commenced, and that the order extending the lien and extending their time to bring an action having been vacated could afford no basis for the action subsequently begun. This may be so; but the question cannot be decided on this application. It may be presented by pleading the statute of limitations in connection with the facts.

The only authority of the court to discharge liens on a motion is that contained in the statute.  The statute confers no authority upon the Supreme Court to cancel a municipal lien upon proof that an action has not been brought to enforce the same within the time prescribed by the statute.  The statute is self-operative, and the lien is discharged without order or action if an action to enforce it be not brought within 90 days after filing the lien, and if notice of pendency thereof be not filed within the same period with the financial officer of the municipal corporation with whom the notice of lien was filed, provided, of course, that the lien has not been continued by order of the court.  The contractors could have brought this matter to a focus by giving notice under section 3417 of the Code of Civil Procedure, requiring that the lienors commence their action to enforce the lien within the time therein specified, and on their failure to do so authority is conferred upon the court to cancel the lien.

It follows, therefore, that the order should be reversed, with $10 costs and disbursements, and motion dismissed, with $10 costs.  All concur.

---

(118 App. Div. 197)

SCHUSTER v. FORTY–SECOND ST., M. & ST. N. AVE. RY. CO.

(Supreme Court, Appellate Division, First Department.  March 8, 1907.)

STREET RAILROADS—PAVEMENT—DUTY TO CONSTRUCT.

    Laws 1890, p. 1112, c. 565, § 98, as amended by Laws 1892, p. 1404, c. 676, provides that every street surface railroad corporation shall keep in repair that portion of the street between its tracks, and 2 feet in width outside thereof, under the supervision of proper local authorities.  *Held*, that such section imposes on a street railway company the duty to keep in permanent repair the pavement of such portions of the streets occupied by them irrespective of any request or demand on the part of the local authorities.

    [Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Street Railroads, §§ 99–111.]

    Ingraham and McLaughlin, JJ., dissenting.

Appeal from Trial Term New York County.

Action by Hugo Schuster, an infant, by Johanna Schuster, his guardian ad litem, against the Forty-Second Street, Manhattanville & St. Nicholas Avenue Railway Company. From a judgment in favor of plaintiff, and from an order denying defendant's motion for a new trial, he appeals. Affirmed.

Argued before PATTERSON, P. J., and McLAUGHLIN, INGRAHAM, CLARKE, and SCOTT, JJ.

Charles F. Brown, for appellant.
E. Lothard McClure, for respondent.

SCOTT, J. The only question necessary to be considered on this appeal is whether or not section 98 of the general railroad law imposes a duty upon a street surface railroad company to keep in permanent repair the pavement between its tracks, and two feet in width outside its tracks, irrespective of any request or demand on the part of the local authorities. (Laws 1890, p. 1112, c. 565, amended by Laws 1892, p. 1404, c. 676.) The defendant's position is that no such duty is imposed unless and until the company is required, by the local authorities, to make repairs. The contrary appears to have been held in Conway v. City of Rochester, 157 N. Y. 38, 51 N. E. 395, and Doyle v. Brooklyn Heights R. R. Co., 58 App. Div. 588, 69 N. Y. Supp. 120.

Upon the authority of these cases the judgment should be affirmed, with costs.

PATTERSON, P. J., and CLARKE, J., concur.

INGRAHAM, J. (dissenting). I do not concur in the affirmance of this judgment. The plaintiff, a boy 11 or 12 years of age, was, on the 15th of April, 1900, playing in Forty-Second street between Eighth and Ninth avenues. Some one called that a policeman was coming, whereupon the plaintiff turned around to see where the policeman was. Seeing the policeman coming on the south side of the street, the plaintiff started to run and ran towards the east about three or four feet away from the rail. As he ran, he turned his head to see where the policeman was, and saw a car approaching about 20 or 25 feet away from him. While looking around, he stepped in a depression in the pavement and pitched forward on the track and was run over by the car. He described the depression as about four or five feet wide along the car track, and about six or seven feet towards the curb. The road was paved with stone blocks, and this depression seems to have been at a place where the blocks had settled, and was said to be about six inches in depth. There is considerable dispute as to the exact location of this depression, but I assume that there was evidence to show that some part of it at least was within two feet of the defendant's track; and there was evidence that the roadway had been in this condition for some weeks prior to the accident.

In his charge to the jury, the learned trial judge, in stating the claim of the plaintiff, said:

"He claims that these injuries which he received were caused through the carelessness and negligence of the defendant in operating this car, and also in maintaining or continuing to maintain a hole near its track."

He then charged the jury that:

"The law imposes upon a railroad company the duty of keeping the space between its tracks and two feet on either side of the tracks in good and safe condition. If the hole was within the area I have described, you will then consider whether or not negligence may be predicated upon it. The company, being charged with the duty of keeping the street in repair as I have described, becomes negligent when it knows that it is out of repair, or it becomes liable in the absence of knowledge that the condition, which by the exercise of reasonable care it should have known to exist, has existed for such a length of time. It is for you to say whether there was a hole, and under the instructions I have given you, whether the defendant was negligent in maintaining it, if there was one."

After the court had finished its charge, and had passed upon the requests of the parties, the plaintiff asked the court to charge:

"That the duty that was laid upon the railroad company to keep its tracks in a condition of permanent repair is an original duty, and that the railroad company cannot await the order of the local authority before putting its railroad in a condition of permanent repair."

That, the court charged, and the defendant excepted. There was no evidence that this condition in the street had been caused in any way by the defendant's laying its tracks in the street, or that it had any connection with the track. The depression commenced within two feet of the track, and extended some distance toward the curb. There was nothing to show that the plaintiff fell into the depression in the street within two feet of the defendant's track. The condition was that a depression existed in the roadway of the street which it was the duty of the city of New York to keep in repair, and that a very small portion of the depression was within two feet of the track, and that the plaintiff started to run east three or four feet from the track and fell into the depression. There was no duty of the defendant to do anything to the street outside of the space two feet from the track, and if the plaintiff started three or four feet from the track and ran east, it would seem that he fell more than two feet from the track into a depression for which the defendant was not responsible. The defendant was not liable because of an accident caused by a depression outside of the space that the defendant was bound to repair. I think that this instruction to the jury, to which the defendant excepted was therefore error, which required a reversal of the judgment. Nor do I think that the defendant was bound to repair this pavement until required by the city authorities. We are not now considering a case where the track of a railroad company, or any structure connected with the track, caused the injury, but with a depression in the roadbed of the street, entirely outside of the track, and which had no relation to it, and was not caused by the construction of the track or the operation of the road. Upon this aspect of the case, it was the fall of the plaintiff caused by stepping into a depression in the roadway that caused the injury, and, in discussing the question, we can eliminate the fact that the car ran over him. The question presented is whether this defendant was liable in an action based upon negligence for a failure to repair this depression in the roadway. The basis of this liability is section 98 of the general railroad law (chapter 565, p. 1112 of the Laws of 1890, as amended by chapter 678, p. 1404, of the Laws of 1892). That section provides:

"Every street surface railroad corporation so long as it shall continue to use any of its tracks in any street, avenue, or public place in any city or village, shall have and keep in permanent repair that portion of said street, avenue or public place between its tracks, the rails of its tracks, and two feet in width outside of its tracks, under the supervision of the proper local authorities. and whenever required by them to do so, and in such manner as they may prescribe. In case of the neglect of any corporation to make pavements or repairs, after the expiration of thirty days' notice to do so, the local authorities may make the same at the expense of such corporation."

A municipal corporation is primarily charged with the duty to keep the streets or avenues in repair so that they may be reasonably safe for the use of the public, and it was the duty of the city of New York to keep this street in repair. In relation to this duty imposed upon municipal corporations, the Legislature has also imposed upon street surface railroads using the surface of the streets an obligation to keep in permanent repair the portion of such street, avenue, or public place, between its tracks, the rails of its tracks, and two feet in width outside of its tracks; but that duty is to be performed under the "Supervision of the proper local authority and whenever required by them to do so." The question presented relates to the duty imposed upon the railroad company under this section of the railroad law. The railroad company having placed its tracks upon the surface of the street, and the street having been paved, regulated and graded, it would be the duty of the city to repair any depression or hole in the pavement outside of the tracks, but for this provision of the statute. Before the railroad company or any other person could remove this pavement or do any work in relation to it, the consent of the city of New York must be obtained. Section 391 of the charter of the city of New York (chapter 466, p. 168, of the Laws of 1901) provides that:

"No removal of the pavement, or disturbance of the surface of any street * * * for any purpose whatsoever, shall be made until a permit is first had from the president of the borough where the work is to be done."

The statute, therefore, required the railroad company to keep in permanent repair the portion of Forty-Second street between its tracks, the rails of its tracks, and two feet in width outside of its tracks, under the supervision of the proper local authorities, whenever required by them to do so; but without power to touch the pavement, or to do any work in relation thereto, until a permit is first had and obtained from the president of the borough within which the street was located. This obligation to repair this street, as I read the statute, did not arise until the local authorities required the defendant to make repairs, for, until they were so required it was impossible for the railroad company to know the manner in which the repairs were to be made. If the railroad company had attempted to remove this pavement for the purpose of making it level, without a permit from the borough president, it would have been guilty of a misdemeanor, and the very statute which imposes the obligation seems to limit the obligation to make the repairs or the time within which they were to be made to a requirement of the local authorities that the repairs be made, prescribing the manner in which they shall be made. Primarily the statute is passed to protect the city, and to relieve it of an obligation imposed upon it to keep the street in repair. The statute does not in any express terms make the

railroad company liable for any accident that happens to third parties in consequence of a failure of either the city or the railroad company to properly repair the streets; but imposes upon the railroad company using a street an obligation to relieve the city from the expense of keeping the street in repair for a space within its tracks, and within two feet of the tracks on either side. Certainly, as between the railroad company and the city, there was no duty imposed upon the railroad company to take up this pavement and restore it to its proper condition until the city had required the railroad company to make the repairs; for, by the express provision of the statute, the railroad company was to have 30 days after the notice had been given to make the repairs and charge the company with the amount expended therefor. Thus, the duty, it seems to me, that was imposed upon the railroad company was to make the repairs when required to do so by the city, and until the city required them to make such repairs, the railroad company was guilty of no default, and was not liable, neither to the city nor to a third party, for an accident caused by a street being out of repair. This view of the statute is, I think, sustained by the case of Conway v. City of Rochester, 157 N. Y. 33, 51 N. E. 395. That was a question between a property owner and the city of Rochester as to the right of the city to make a contract for paving a street through which a line of street railroad was operated.

Two questions were certified to the Court of Appeals. The first was:

"Are the abutting owners on Lyell avenue liable for the cost of constructing a new pavement between the tracks, and the rails of the tracks, and for two feet in width outside of the tracks of the Rochester Railway Company?"

Second:

"Is the duty of the common council of the city of Rochester to request the Rochester Railway Company to construct a pavement between its tracks, and the rails of its tracks, and for two feet outside thereof on Lyell avenue, before the city constructs such pavement, mandatory?"

After quoting section 98 of the general railroad law, to which attention has been called, the court said that the statute was mandatory as to the duty of the railroad company using the street to keep such portion of the street in permanent repair; that the municipal authorities were given no authority to relieve the railroad corporation of the whole or any portion of the needed repairs, or to impose the whole or any portion of the cost upon the abutting owners of the city at large; that "having provided that a given portion of a street occupied by a street surface railroad corporation shall be kept in permanent repair, and that the work shall be done by the corporation in actual occupation of the tracks, the statute next undertakes to provide a method by which the duty enjoined by the statute can be enforced in such a manner as will best protect the interests of the public in such streets, and so it declares that when such repairs are made they shall be made 'under the supervision of the proper local authorities.' But the power of the local authorities does not end with the right of supervision of the repairs made to such portion of a street by a surface railroad corporation. The Legislature saw fit to vest in the local authorities the further right to determine when the repairs should be made and how they should be made. * * * The

local authorities may determine when and how the streets shall be repaired, but when that is done the statute steps in and says that the railroad company is to do the work. * * * Our examination of the statute then leads to the conclusion that, under section 98 of the railroad act, it became and was the duty of the Rochester Railroad Company to keep in permanent repair such portion of the street through which it passed, as was within its tracks, and two feet in width outside, and that the local authorities of that city were vested with the authority of determining when the repairs should be made, and thus empowered, the local authorities did determine that repairs should be made and the character of them. They decided that the entire street should be repaved and the material to be used should be asphalt. This they had the right to do, and, when this determination was made, the statute intervened and commanded that the Rochester Railway Company should make the repairs thus ordered, under the supervision of the local authorities."

This seems to me to be a plain declaration that the duty resting upon the railroad company did not arise until the municipal authorities determined what repairs were necessary and when they should be made, and that, as in this case, no such determination has been made, neither as to the nature of the repairs, nor the time when they should be made. no duty was imposed upon the railroad company to make the repairs; and the fact of the existence of this depression, even though it was within two feet of the railroad, was not a failure by the railroad company to perform any duty imposed upon it by law, and therefore could not be the basis of a recovery by the plaintiff. That the municipal corporation should have control over the time when and the manner in which the public streets are to be repaired, or the pavement torn up, seems to me essential to the proper maintenance of the streets. It may well be that the local authorities would consider that this street should not be torn up at this time because of the use of the street, but that it should be repaired when the obstruction to the street would cause less inconvenience to the public. This, the statute left to the discretion of the local authorities, both as to the time when and in the manner in which the repairs should be made. Unless the railroad company was under the absolute duty to at once repair the pavement as soon as it became in any way out of repair, without any permit from or requirement of the municipal authorities, then it seems to me that there can be no liability for a failure to make the repairs, and as the statute only imposes the duty to make the repairs upon the railroad company when required by the municipal authorities, the duty did not arise until the railroad company was required to make the repairs, and there was therefore no violation of duty by the defendant.

The case of Doyle v. City of New York, 58 App. Div. 588, 69 N. Y. Supp. 120, is also relied upon by the plaintiff. In that case the court was construing the charter of the Brooklyn City Railroad Company under which the railroad that caused the injury was operated. The provisions of that charter are materially different from the provisions of section 98 of the railroad law, and provides a much broader obligation upon the corporation. In the course of the opinion in that case, the court refers to section 98 of the railroad law, and there are

some expressions in the opinion which would seem to indicate that the defendant was liable without any action by the city authorities; but what was said in relation to the railroad law was not necessary to a decision of the case, as the liability could have been and was placed upon the provision of the charter of the railroad company; but it seems to me that the views of the Court of Appeals, as expressed in Conway v. City of Rochester, are inconsistent with the intimation of the court in the Doyle Case.

I think, therefore, the judgment should be reversed.

McLAUGHLIN, J., concurs.