THE PEOPLE OF THE STATE OF NEW YORK on the Complaint of THOMAS P. MULHERN, Complainant, *v.* ISIDORE KAUFMAN and JOHN DEEGAN, Defendants.

City Magistrates' Court of New York, Borough of Brooklyn, Eighth District, December 3, 1937.

*Protter & Bagley* [*Julius Bagley* of counsel], for the defendant Deegan.

*Abraham J. Isserman,* of the New Jersey bar, for the defendant Kaufman.

*Hallam M. Richardson,* for the complainant.

PINTO, C. M. By a previous ruling the investigation of the complaint pursuant to the summons has been limited to one charge, viz., that defendants conspired to commit a crime in violation of subdivision 1 of section 580 of the Penal Law. The facts constituting the alleged crime are set forth in complainant's affidavit

which alleges in substance that these defendants did unlawfully plan and conspire to prevent the carrier boys of certain branches of the Brooklyn *Daily Eagle*, a daily newspaper, from lawfully carrying on the duties of their employment in the circulation of the said paper, and did encourage and incite them to disorderly conduct and wrongfully caused injuries to the public peace and the morals of the said minors and did unlawfully cause crowds to collect on a public thoroughfare. It is further averred that the objects and purposes of such unlawful agreement and acts are in violation of section 722 of the Penal Law.

The question presented for determination is whether disorderly conduct, as defined by section 722, is strictly a crime under the Penal Law.

Law scholars, text writers on criminal law and jurists are in general accord that " crime " is an act committed or omitted, in violation of a public law either forbidding or commanding it, though in common usage the word " crimes " denotes such offenses as are of " a deeper and more atrocious dye, while smaller faults, and omissions of less consequence, are comprised under the gentler names of ' misdemeanors ' only." (4 Blackstone's Commentaries [17th ed.], p. 5. See, also, 16 C. J. § 2, p. 50; *Callan* v. *Wilson*, 127 U. S. 540, 549.)

In the broadest sense, the term " crime " includes all offenses against public statutes — felonies, misdemeanors and even charges under the grade of a misdemeanor. (1 Bouvier [Rawle's Rev.], 729; *McCord* v. *People*, 46 N. Y. 470, 473; *United States* v. *Lee Huen*, 118 Fed. 442, 445.)

1 Bishop on Criminal Law (9th ed.), section 32, calls crime " any wrong which the government deems injurious to the public at large, and punishes through a judicial proceeding in its own name."

As there is no longer any common-law crime in this State, the neglect of a legal duty or the commission of an act does not constitute a crime unless some statute so prescribes. (*People* v. *Knapp*, 206 N. Y. 373, 380, 381.)

Therefore, for a strict legal meaning it is necessary to examine the statutes defining " crime." Under our old Code of Criminal Procedure, the term " crime " did not include petty offenses which were subject to summary convictions by a magistrate. (*Steinert* v. *Sobey*, 14 App. Div. 505.)

In that case Judge CULLEN, after observing that the word " crime," within many definitions found in dictionaries and textbooks, may be broad enough to include the offense of disturbing a religious service, added (at pp. 507, 508): " But whatever be the correct

and accurate definition of the word ' crime,' I think that it is not used in the Code of Criminal Procedure in a sense broad enough to include petty offenses subject to summary convictions by a magistrate. In the Code crimes are divided into felonies and misdemeanors, and no provision is found for the trial of either before a magistrate, as such. It is, therefore, apparent that too broad a significance must not be given to the term ' crime ' as used in the Code."

Under the present Penal Law (Art. 1, § 2) a crime is defined as " an act or omission forbidden by law, and punishable upon conviction by 1. Death; or, 2. Imprisonment; or, 3. Fine; or, 4. Removal from office; or, 5. Disqualification to hold any office of trust, honor or profit under the State; or, 6. Other penal discipline."

In 1934 the following amendment was enacted: " Except that the acts defined as traffic infractions by the Vehicle and Traffic Law, heretofore or hereafter committed, are not crimes." (Laws of 1934, chap. 485.)

Following the above definition, said section 2 continues: " Division of Crime. A crime is 1. A felony, or 2. A misdemeanor." A felony is then defined as a crime which is punishable by death or imprisonment in a State prison; as to a misdemeanor, it is provided " any other crime is a misdemeanor."

It is significant that an " offense " is entirely omitted from both the definition and division of ' crime."

Disorderly conduct is defined in 14 Cyclopedia of Law and Procedure, pages 467 and 468, as follows: " In its broad sense the term ' disorderly conduct ' embraces certain minor offenses which are usually defined by statute and consist of disturbance of the peace and quiet of the public or the communities, or families or a class of persons, or conduct which tends to cause or provoke a breach of the peace or corrupt public morals. A wilful or unlawful purpose is not an element of the offense, unless made so by statute."

At common law there was no offense or crime known as " disorderly conduct." (3 Brill's Encyclopedia of Criminal Law, § 1319; 18 C. J. p. 1215; *People ex rel. Frank* v. *Davis*, 80 App. Div. 444.)

In New York State the term " disorderly conduct " had its origin in the statute law in sections 5 and 6 of chapter 11 of the Laws of 1833, under which driving in excess of five miles an hour constituted disorderly conduct. This was broadened in scope by the Laws of 1859 (Chap. 491, § 5), and by the Laws of 1860 (Chap. 508, §§ 20 and 21), the identical provisions of which were enacted as a part of the Consolidation Act affecting the city of New York (Laws of 1882, chap. 410, §§ 1458, 1459). Those pro-

visions of the Consolidation Act were continued in force by sections 1608 and 1610 of the Greater New York Charter.

Under the Consolidation Act, magistrates were given summary jurisdiction to hear, determine and render judgment, and disorderly conduct was deemed any act which in the opinion of the magistrate tended to a breach of the peace. In such prosecutions the police and the district attorneys usually characterized the offense merely as " disorderly conduct."

In 1922 Mr. Justice BENEDICT, of the Second Department, decided in *People ex rel. Potter* v. *Managers Wayside House* (119 Misc. 428) that there was no valid provision of law for the punishment of " disorderly conduct " in New York city; whereas in the First Department it was held to the contrary in *People ex rel. Goldstein* v. *Warden of Workhouse* (120 Misc. 368).

By reason of this conflict of authority, concerted action was taken by the prosecuting officials and the chief city magistrate of the city of New York, as well as the district attorneys in other cities of the first class, to secure statewide legislation which would clearly define the right to punish persons convicted of disorderly conduct, and to definitely define the offense. This resulted in the enactment of section 722 of the Penal Law in 1923, the pertinent provisions of which, for the purpose of this decision, read as follows:

" Any person who with intent to provoke a breach of the peace, or whereby a breach may be occasioned, commits any of the following acts shall be deemed to have committed the *offense* of disorderly conduct:

" 1. Uses offensive, disorderly, threatening, abusive or insulting language, conduct or behavior;

" 2. Acts in such a manner as to annoy, disturb, interfere with, obstruct, or be offensive to others." (Italics ours.)

It is important to note that the Legislature labeled disorderly conduct as an " offense," whereas every other section in the Penal Law defining a crime provides that a violation thereof is either a felony or a misdemeanor. Undoubtedly the Legislature had some special reason for classifying disorderly conduct as an offense and empowering magistrates with summary jurisdiction over such proceedings. Their intent becomes quite obvious when considered in the light of prior judicial pronouncements, distinguishing between crimes and so-called police offenses which were termed " less than crimes."

In *People ex rel. Burke* v. *Fox* (205 N. Y. 490), decided in 1912 (at p. 494), Judge WERNER wrote: " There are many minor offenses, colloquially classified as crimes, which are merely violations of

police regulations. Vagrancy, public drunkenness, various kinds of disorderly conduct, and other minor offenses fall within this category and have from time immemorial been the subject of summary disposition in Magistrates' tribunals." Again (at p. 496) he stated: "We think the offense [disorderly conduct] charged against the relator was not a crime in the strict sense of that term, but an offense against a police regulation which the Magistrates' Court had the power to dispose of summarily on Sunday as on other days of the week. We regard the limitation in section 5 of the Judiciary Act, restricting the Sunday jurisdiction of magistrates to the arrest, committal or discharge of a person charged with an offense ' in a criminal case,' as not applicable, because this is not a ' criminal case ' within the purview of that statute." (See, also, *Steinert* v. *Sobey*, 14 App. Div. 505.

After the enactment of section 722 of the Penal Law, the Court of Appeals again referred to the distinction between a crime and an offense in *People* v. *Grogan* (260 N. Y. 138), where (at p. 141) Judge CRANE stated: " Before passing to the attack which has been made upon this statute, we must keep in mind the distinction between a crime, to wit, a misdemeanor, and those minor offenses dealt with summarily by justices of the peace or magistrates, known as disorderly conduct, breach of the peace, etc. The distinction is clearly stated by the Appellate Division of the Fourth Department in *Matter of Cooley* v. *Wilder* (234 App. Div. 256, 259). The court there said: ' In passing we may mention a third class of offenses which are neither felonies prosecuted by indictment and triable by a common law jury (Art. 1, § 2), nor misdemeanors triable by Courts of Special Sessions with or without the statutory jury of six (Art. 6, § 18), but petty offenses triable summarily by a magistrate without a jury. Within this category are cases of persons charged with intoxication, vagrancy, with being disorderly persons, etc.; also many cases of violation of municipal ordinances. (Village Law, § 180; Second Class Cities Law, § 183.) These minor offenses, below the grade of misdemeanors, have always constituted in our law a class by themselves. (*Tenement House Department* v. *McDevitt*, 215 N. Y. at p. 168.)' "

The latest pronouncement by the appellate courts on this point is in *People ex rel. Cohen* v. *Collins* (238 App. Div. 592) where (at p. 594) Justice MARTIN stated: " Disorderly conduct as defined by section 722 of the Penal Law and sections 1458 and 1459 of the New York City Consolidation Act (Laws of 1882, chap. 410), is not a crime but an offense of which a city magistrate has summary jurisdiction to hear and determine. (Penal Law, § 724; *People ex rel. Burke* v. *Fox*, 205 N. Y. 490.)" (See, also, Cobb

on Inferior Criminal Courts Act, pp. 126, 132; *People* v. *Kelly*, 152 Misc. 372; *People* v. *Sadowsky*, 149 id. 583.)

On principle and in the light of these authorities, disorderly conduct as defined by section 722 of the Penal Law is not a " crime " within the meaning and intent of the Penal Law, and more specifically within the provisions of section 580, subdivision 1.

This conclusion receives further support from another angle. Under section 723 of the Penal Law, disorderly conduct is punishable by imprisonment for a period not exceeding six months, or by a fine not exceeding fifty dollars, or both. Conspiracy under section 580 of the Penal Law is a misdemeanor and by section 1937 of the Penal Law is punishable by imprisonment up to one year, or by a fine not exceeding $500, or by both.

It is entirely unreasonable to assume that the Legislature intended that persons convicted of *planning* to commit disorderly conduct should be punished for a misdemeanor, while the *actual commission* of the act of disorderly conduct is made an offense with a punishment considerably less than that provided for a misdemeanor.

Defendants' motion is granted. The summons is dismissed and the proceeding terminated.