# HARMON v. DONOHOE, Appellant.

153 | 263
163 | 409

### Division One, December 22, 1899.

1. **Promise to Marry:** BREACH: FRAUDULENT REPARATION. It is a palpable fraud for one who has been sued for a breach of a promise to marry, to offer sometime after the suit is brought to marry the woman, accompanying the offer with emphatic declarations that he would walk away and never live with her.

2. ———: ———: INSUFFICIENT EVIDENCE. Where there is sufficient evidence in the case to support the verdict outside of the testimony of plaintiff, who sues for a breach of a promise to marry, the judgment will not be disturbed, although the plaintiff may be shown by the record to be untruthful.

3. ———: ———: ———: UNCHASTITY. Proof of untruthfulness in a woman does not establish her unchastity, even though it go so far as to show she is a common liar.

4. ———: ———: "JUSTIFIABLE CAUSE." The use without definition, of the words "justifiable cause" in an instruction relating to the defendant's refusal to marry plaintiff, is not error, if, when this instruction is read in connection with other proper ones, it plainly appears what causes would justify defendant's refusal to keep his promise with plaintiff.

5. **Instruction:** DEFINITION OF WORDS. If defendant is dissatisfied with the general character of the definition of words used in plaintiff's instructions, it is his privilege and duty to ask a proper instruction.

6. **Promise to Marry:** DAMAGES: INSTRUCTION. An instruction otherwise without criticism said that "the jury may assess her damages at any sum they may deem proper, not to exceed the amount sued for, namely $10,000." *Held,* that these words, read in connection with what precede them, are not subject to the objection of such uncertainty as to have misled the jury.

7. ———: CHARACTER OF FATHER AND SISTER. Evidence as to the character and chastity of the woman's father and sister in a breach of promise suit should be excluded.

Appeal from Boone Circuit Court.—*Hon. John A. Hockaday*, Judge.

AFFIRMED.

*Odon Guitar, W. H. Truitt, Jr.* and *F. M. Brown* for appellant.

(1) If defendant entered into a marriage contract with the plaintiff, believing at the time that she was a chaste and virtuous woman, when in fact she was not, she can not recover in their action. Irving v. Greenwood, 1 Car. & Payne, 350; Young v. Murphy, 3 Bing. New Cases, 54; Espy v. Jones, 37 Ala. 379; Woodward v. Bellamy, 2 Root (Com.), 354; Bell v. Eaton, 28 Ind. 468; Guptill v. Verback, 58 Ia. 98; Berry v. Bakeman, 44 Me. 164; Stratton v. Dole, 45 Neb. 472; Palmer v. Andrews, 7 Wend. 143; Kelley v. Highfield, 15 Oregon, 277; Von Storch v. Griffin, 77 Pa. St. 504; Foster v. Hanchett, 68 Vt. 319; Morgan v. Yarborough, 5 La. Ann. 311; Burnett v. Simpkins, 24 Ill. 264. (2) The contract of marriage, if any, according to plaintiff's own testimony, was in consideration of illicit intercourse, was tainted with immorality, and she can not recover upon it. Hanks v. Naglee, 54 Cal. 51; Goodall v. Thurman, 1 Head (Tenn.) 209; Baldy v. Stratton, 11 Pa. St. 316; Steinfeld v. Levy, 16 Abb. Pr. (N. S.) 26; Boigneres v. Boulon, 54 Cal. 146; Button v. Hibbard, 82 Hun. 289; Burke v. Shaver, 92 Va. 345; Judy v. Sterrett, 153 Ill. 94; Guptill v. Verbact, 58 Ia. 98; 3 Sutherland on Dam., sec. 989; 1 Bishop on Mar., Div. and Sep., sec. 211. (3) To entitle plaintiff to recover in this case it devolves upon her to show by a preponderance of the testimony, a mutual contract of marriage and its breach by defendant, and the seduction of the plaintiff by the defendant. Plaintiff's third instruction not only fails to devolve the proof of seduction on the plaintiff to entitle her to recover, but actually shifts the burden, and requires defend-

ant "to establish to the satisfaction of the jury by the weight or preponderance of credible testimony that he did have a justifiable cause for his refusal to carry out his promise." The court erred in giving said instruction. Liese v. Meyer, 143 Mo. 547; Comer v. Taylor, 82 Mo. 341; State v. Marshall, 137 Mo. 472. (4) Plaintiff does not allege in her petition that "defendant seduced her." That he induced her to submit to sexual intercourse with him constitutes, if the consent was mutual, no ground of damage, compensatory or exemplary. Therefore at the conclusion of plaintiff's testimony showing there was no "seduction in the case" and that the consideration of the promise of marriage was the consent of the plaintiff to sexual intercourse, the court erred in refusing to give defendant's first instruction. Bailey v. Bannon, 28 Mo. App. 39; Comer v. Taylor, 82 Mo. 341; State v. Reeves, 97 Mo. 668; State v. Marshall, 137 Mo. 463; State v. Patterson, 88 Mo. 88; Baird v. Bochner, 72 Ia. 318; State v. Primm, 98 Mo. 368; Smith v. Young, 26 Mo. App. 575. (5) Plaintiff's fifth instruction gives the jury unlimited discretion in the assessment of damages, authorizing it to "assess her damages at any sum they may deem proper, not to exceed the amount sued for, namely, $10,000. Hawes v. Stock Yards Co., 103 Mo. 60; Kick v. Doerste, 45 Mo. App. 134; Flint v. Railroad, 38 Mo. App. 94. The cases cited are clearly distinguishable from the case of Browning v. Railroad, 124 Mo. 55. Our objection to the instruction in question is not only that it failed to state the grounds of damage, but that after stating grounds of damage (some of which were without testimony to sustain them) it then gave the jury unqualified discretion to find any amount of damages in favor of plaintiff not to exceed $10,000. (6) There being no "seduction" alleged or proved plaintiff could only recover for the alleged breach of contract if there was such a contract existing between the parties and a breach thereof by the defendant, provided the consideration upon which said contract

was founded, was not immoral or illegal, and that plaintiff was not a lewd, and unchaste woman when said promise was made without the knowledge of defendant. Comer v. Taylor, 82 Mo. 341.

*J. L. Stephens* and *Turner & Hinton* for respondent.

(1) Instructions numbered 1 and 2, prayed by appellant, being demurrers to the evidence, were properly refused because there was substantial evidence on the trial in support of respondent's petition. (2) If a man and woman enter into a mutual engagement to marry each other, especially (after several months of courtship), and after this mutual plighting of marriage vows, the man, under or by reason of such previous contract or promise of marriage, induces or prevails upon the woman to submit to sexual intercourse with him, and he afterwards refuses to marry her without some justifiable cause, then the promise or contract of marriage is a lawful one supported by a good and lawful consideration, namely, the promise or undertaking of the woman to marry him, and he must either execute the contract by marrying her or answer in damages for the breach of his contract. State v. Eckler, 106 Mo. 590. (3) The learned opposing counsel claim to have made the discovery that no "seduction" is alleged in the respondent's petition. The allegation is "that after making the said promise to marry the plaintiff, defendant, under and by means of said promise of marriage induced the plaintiff to submit to sexual intercourse with him, so that she became pregnant, etc." Although in this allegation the pleader has not used the word "seduced," he has certainly employed language of at least equivalent clearness and strength. Nor has the pleader used the generic term "debauched," but he has employed the language "sexual intercourse," which points out the specific kind of "debauchment." The pleader has not used the terms "deceitful" and "guile" and "blandishment," etc., but he has

pleaded that it was "under and by means of a previous promise of marriage" that she was induced to submit, etc.

MARSHALL, J.—Damages for breach of promise of marriage.

Plaintiff sues defendant for ten thousand dollars damages for breach of promise of marriage, and by way of aggravation of damages alleges seduction under such promise. The promise is alleged to have been made in April, 1895, to be solemnized, first, in June, thereafter in September and October, 1895, and in consequence of the seduction the birth of a child is averred on the 4th of March, 1896. Defendant denies every allegation in the petition not especially admitted, and then affirmatively pleads sexual intercourse with plaintiff by mutual consent, and not under promise of marriage or by means of deception or undue influence; admits the birth of the child and his paternity of it, and avers that believing the plaintiff to be virtuous and chaste and that he was the father of her child, he promised to marry her, and that in pursuance thereto he procured a marriage license, and took a justice of the peace, and witnesses, to her house, and offered to marry her but she refused; that afterwards he learned that she was, before his acquaintance and connection with him, an unchaste and dissolute woman, and that if he had known that fact he would not have offered her marriage; and concludes with the allegation that at and long prior to the alleged promises, she was a lewd and unchaste woman, and concealed the fact from him, by reason of which he was mislead and induced to make said offer of marriage. The reply is a general denial.

There is no substantial conflict in the evidence that in March or April, 1895, the defendant promised and agreed to marry plaintiff, and "asked" and obtained her mother's consent, and so told various persons; nor that under such promise he afterwards seduced her, in consequence of which, many

times repeated, she bore a child by him; nor that prior to the institution of this suit he had refused to fulfill his promise. The offer to marry her set up in the answer was made about twenty days after this suit was begun, and was accompanied with such emphatic declarations that he would marry her but would walk away and never live with her, and that he had disposed of all his property and could not support her, that it is so palpable a fraud as to be unworthy of further notice.

The issue in the case, which was specially urged on the trial in the circuit court, was the character of the plaintiff. Her previous chastity was attacked, and one witness, Otto Geringer, testified to frustrated attempts to lead her astray when she was a child of about fifteen years of age, and another witness, John Zinn, testified to having sexual intercourse with her many times when she was about fifteen or sixteen years of age, all of which plaintiff denied.    Both of these men were married men at the time, and they were proved on the trial to have bad reputations for morality and veracity, the latter's reputation being that of a common liar, by a number of most excellent and reputable people of Cooper and Boone counties, and defendant made no counter showing.   Defendant attacked plaintiff's reputation for truth and chastity, and showed by the testimony of the impeached witnesses, Geringer and Zinn, and by four other witnesses that it was bad, but the plaintiff showed by the testimony of seven witnesses that her reputation for truth and chastity was good.   The issue in this regard was therefore squarely put to the jury and they found for the plaintiff and their finding was approved by the trial judge.   Under such circumstances this court has always refused to interfere with a verdict and judgment.

Defendant strenuously insists that the plaintiff is shown by the record to be untruthful.   On cross-examination she denied testifying before the grand jury of Pettis county on the charge of attempted rape, on her, by Geringer, in 1892,

and the record of the proceedings before the grand jury and the testimony of the prosecuting attorney and of one of the grand jurors shows that she did so testify. If the verdict in this case depended wholly upon the testimony of the plaintiff herself we should feel justified in reversing it for this reason, but there is abundant testimony in the case outside of hers upon which to support the verdict. The testimony of her mother and the defendant's admissions to third persons prove the promise of marriage, and the defendant's answer and testimony admit the sexual intercourse and the paternity of the child, and it is not pretended that she was intimate with any other named persons than Geringer, and he says his attempts were unsuccessful or rather interrupted before accomplishment, and Zinn, and he locates the times at least three years before the birth of the child, so he could not be the father of the child. And the specific charges of unchastity resting upon the testimony of these two men, and they having been successfully and uncontradictedly impeached, the only charges remaining to be proved, to-wit, unchastity, were not established, and the evidence as to her general reputation having been conflicting, with a preponderance, as to numbers, in her favor, it will be seen that, as permitted by the court in the fifth instruction given for defendant, the jury may have believed the plaintiff swore untruthfully about not testifying before the grand jury and may have disregarded and rejected her whole testimony, and yet have found upon the other evidence in the case that, in spite of her untruthfulness, she had been wronged by the defendant, and may have believed that notwithstanding she did not tell the truth in this matter, the defendant had no right to debauch her under promise of marriage. In addition to this her veracity was not made an issue in the case by the pleadings. Her virtue was challenged, and proof of untruthfulness would not establish unchastity. Evidence of her lack of veracity was admissible to disprove her testimony as to her

virtue, but any amount of proof that she was even a common liar would not tend to establish a charge of unchastity.

We will not, therefore, disturb the judgment on account of this assignment of error.

## II.

Error in instructions is also assigned.

The demurrer to the evidence at the close of the plaintiff's case was properly overruled, not only because the plaintiff had proved *prima facie*, all the allegations of the petition necessary for a recovery, but because properly considered the defendant's answer admitted, substantially, the plaintiff's right to recover unless he proved his affirmative defense.

At the request of the plaintiff the court instructed the jury as follows:

1. If the jury shall believe from the evidence that in the month of April, 1895, the plaintiff and defendant then being single and unmarried persons, entered into a contract or engagement to marry each other, and that within twelve months thereafter the plaintiff requested the defendant to marry her, and the defendant *without justifiable cause* failed and refused so to do, then the court instructs the jury that their verdict must be for the plaintiff.

2. If the jury believe from the evidence, that, after the institution of this suit, the defendant offered to marry the plaintiff, but that he made such offer in bad faith merely to avoid liability in this action, and with the intent or purpose immediately to abandon and desert plaintiff, and such bad faith, intent or purpose was known to the plaintiff, then the plaintiff was under no obligation to accept such offer, and the same constitutes no defense whatever to this action.

3. The jury are instructed that if they find and believe from the evidence that a mutual promise of marriage was entered into between the plaintiff and defendant about the

month of April, 1895, and that prior to the institution of this suit the defendant failed and refused to carry out such promise and engagement, then the burden is upon the defendant to establish to the satisfaction of the jury by the weight or preponderance of credible testimony that he did have a *justifiable cause* for such refusal to carry out his promise.

4.  In determining the question of the good or bad faith of the defendant in offering to marry the plaintiff after the institution of this suit the jury may take into consideration the prior declarations, if any, of the defendant touching his purpose to marry and then desert her, as well as the prior act and conduct of the defendant in converting his property and estate, if he did so convert his property, together with all the other facts and circumstances in evidence in the case.

5.  If the jury shall believe from the evidence that a mutual promise and engagement was entered into between the plaintiff and defendant about the month of April, 1895, to marry each other, and that under said pre-existing promise of marriage defendant induced and procured the plaintiff to submit to sexual intercourse with him, whereby she became pregnant and bore a child on the fourth day of March, 1896, then in determining the amount of damages to which they may believe the plaintiff is entitled they may take those facts into consideration, together with the pain and anguish of body and mind she may be shown by the evidence to have suffered, together with all the other facts and circumstances in the case; and the jury may assess *her damages at any sum they may deem proper*, not to exceed the amount sued for, namely, $10,000.

The defendant asked the court to instruct the jury as follows:

1.  The jury are instructed that under the pleading and evidence in this cause they will return a verdict for the defendant.

2.  There being no evidence in this case that plaintiff,

prior to the institution of this suit, notified or informed the defendant that she was ready to marry him, and that he refused to marry her, the verdict of the jury must be for the defendant.

3.    The jury are instructed that if they find from the evidence that the plaintiff was a lewd and unchaste woman prior to the alleged breach of the alleged contract to marry, and that defendant was ignorant of the same and believed her to be a chaste and virtuous woman, their verdict must be for the defendant.

4.    Although the jury may believe from the evidence that defendant had promised to marry the plaintiff, and that different dates had been fixed for the marriage before the bringing of the suit, yet, if they further find that after the bringing of the suit plaintiff agreed with the defendant that they would be married on a certain day, and that defendant, in pursuance of such agreement procured his license to marry the plaintiff, and went, with a justice of the peace, and witnesses, to the house of the plaintiff's father where she was staying, for the purpose of carrying out his promise, and then and there offered to marry the plaintiff and that plaintiff refused to marry the defendant, their verdict must be for the defendant, unless such offer was made as set out in instruction number 2 given on behalf of plaintiff.

5.    If the jury believe from the evidence that any witness in the cause has sworn willfully false to any matter material to the issues in the cause, they may disregard and reject the entire testimony of such witness.

6.    If the jury find from the evidence that defendant promised to marry the plaintiff on condition that she would permit him to have criminal intercourse with her, and she did permit such intercourse, such promise is against public policy and void, and the jury should find their verdict for the defendant.

7.    That defendant had disposed of his property consti-

tutes no legal reason or excuse for plaintiff's refusal to marry the defendant, and if the jury find from the evidence that defendant, on the twenty-ninth day of March, 1896, proposed to marry the plaintiff on the next day, and that plaintiff accepted his offer and agreed to marry defendant on the next day, and further find that on the next day defendant, with a license to marry plaintiff, and an officer authorized to solemnize said marriage, went to the house of plaintiff, and then and there offered himself in marriage to plaintiff, and that she refused to marry him, they will find their verdict for the defendant; unless such offer was made as set out in instruction number 2, given on behalf of plaintiff.

8.   In weighing the testimony in this cause the jury will take into consideration the interest of the several witnesses in the cause and their relations to the parties in the case, and give such weight to the evidence of each witness as they believe they are severally entitled to, if any.

9.   Unless the jury find from the evidence that prior to the institution of this suit the plaintiff offered to marry the defendant, and that the defendant refused to marry the plaintiff, their verdict must be for the defendant.

10.   Although the jury may believe from the evidence, that there was a mutual promise of marriage between the plaintiff and defendant, and that the same was postponed from time to time, yet, unless they find from the evidence that there was an actual offer made by the plaintiff to the defendant to marry him, and a refusal by him to marry plaintiff, their verdict must be for the defendant.

The court refused to give instructions numbered 1 and 2 and refused to give instructions numbered 4 and 7 as asked by defendant.   And against the objection of defendant added thereto the following qualifications, "unless such offer was made as set out in instruction number 2, given on behalf of plaintiff."   The court gave defendant's instructions

numbered .3, 5, 6, 8, 9 and 10 as prayed, and gave also defendant's instructions numbered 4 and 7 as modified by the court.

Plaintiff's instructions numbered 1 and 3 are objected to because they authorize a verdict for plaintiff unless the defendant refused to marry her "without justifiable cause," without defining the legal meaning of "justifiable cause;" and instruction number 5 is objected to because it permits the jury to assess plaintiff's damages, "at any sum they deem proper, not to exceed the amount sued for, namely, $10,000."

Instructions one and three were doubtless taken from the instructions in Bird v. Thompson, 96 Mo. 1. c. 426, for the same terms, "justifiable cause," were used in that case, and this court pointed out in that case that: "While the instructions, when taken singly, may be subject to verbal criticism, when taken as a whole no intelligent juror could have been misled by them." That is, the other instructions given, explained what a justifiable or reasonable cause for refusing to marry the plaintiff was, and those other instructions, read with the instruction criticised, put the whole matter before the jury. We reached the same result in Liese v. Meyer, 143 Mo. 1. c. 560.

Instructions one and three for plaintiff when read in connection with instructions three and six given for defendant show what causes would justify the defendant in refusing to marry the plaintiff, to wit, her previous unchastity or that he promised to marry her on condition that she would permit him to have criminal intercourse with her. This was the gist and sum of the case as presented by the evidence, and these were the only justifiable causes, *bona fide*, asserted by the defendant. The jury could not therefore have misunderstood or been mislead by these instructions as to what was meant by justifiable cause. Moreover if the defendant was dissatisfied with the general character of the definition of justifiable cause, it was his privilege and duty to ask a proper

instruction.   [Browning v. Railroad, 124 Mo. 1. c. 71.]
However as pointed out he did ask and the court gave explan-
atory instructions, and the defendant has nothing to complain
of in this respect.

Instruction numbered five, given for plaintiff, is subject.
to verbal criticism, but it is in fuller form than the instruc-
tion on the measure of damages, which was approved in
Browning v. Railroad, 124 Mo. 1. c. 71, because the defend-
ant did not ask a more specific instruction.   Instruction five
lays the predicate for the recovery of any damages, specifies
what the jury may consider in determining the amount of
damages and then tells the jurors they may assess "any sum
they may deem proper, not to exceed the amount sued for,
namely, $10,000." If the instruction had been simply that the
jury might give the plaintiff any sum they deemed proper, not
to exceed the amount sued for, it would have been subject to
the objection of uncertainty urged, but read in connection
with that precedes the words objected to in the same instruc-
tion, defining specically what the elements of plaintiff's dam-
ages must be, "no intelligent juror could have been misled"
by the instruction.

Instructions numbered one and two, asked by defendant
were properly refused, because number one was a demurrer
to the evidence upon the whole case, which the court mani-
festly could not give in the conflicting state of the evidence,
and number two, because the evidence was exactly the con-
trary of the fact stated therein and showed beyond question
that the plaintiff begged and importuned the defendant to
marry her.

The modification by the court of defendant's instructions
numbered 4 and 7 by the addition of the words, "unless such
offer was made as set out in instruction number 2 given on
behalf of plaintiff," was eminently proper, because those in-
structions related to the same matter, to wit, the good faith
of the defendant's offer of marriage, after the suit was

brought, and authorized a verdict for defendant on this ground, if the jury believed he was acting *bona fide*. The instructions as given were more favorable to the defendant on this issue than he was entitled to, and the verdict shows that the jurors were not beguiled by this specious and fraudulent attempt of the defendant to escape a well merited punishment for the inexcusable wrong he had done the plaintiff in breaking his promise to marry her, aggravated by his debauchery of her.

The evidence offered as to the character and chastity of plaintiff's father and sister was properly excluded. They were not on trial.

The judgment of the circuit court is therefore affirmed. All concur.