# SABINA ASMUS, Respondent, v. UNITED RAIL-WAYS COMPANY OF ST. LOUIS, Appellant.

### Springfield Court of Appeals, January 3, 1911.

1. **STREET RAILWAYS: Obstruction in Street: Dangerous Switch Guard: Negligence: Question for Jury.** Plaintiff's husband, while driving his wagon across defendant's street car tracks, was jolted off the wagon, fell, and was fatally injured on account of the wagon striking a switch guard or flange, which extended two inches or more above the level of the street. This switch was known as "an unbroken main line switch." The evidence on the part of the plaintiff tended to show that another form of switch, known as a "tongue-mate switch" should have been used; that this latter switch was in general use and was gradually taking the place of the "unbroken main line switch," and was more nearly on a level with the street, and was considerably less of an obstruction. *Held*, that the question of defendant's negligence was for the jury.

2. **PLEADING: Street Railways: Right to Use Street.** When the petition is drawn on the theory that a street railway company was rightfully using the street, the plaintiff cannot make a point on the failure of the company to show a right or license to occupy the street.

3. **EVIDENCE: Death by Wrongful Act: Minor Children.** A widow, suing for the death of her husband, may testify as to the number and ages of her minor children.

4. **STREETS AND HIGHWAYS: Street Railways: Use of Streets: Degree of Care.** The public streets are for the public generally, and no individual or corporation has the right to erect, or maintain thereon obstructions so dangerous in themselves as to practically withdraw the street from the public use. On the other hand the operation of street cars and vehicles over the public streets is lawful, and the operators thereof, so far as others using the streets are concerned, are only bound to exercise ordinary care to prevent injury.

5. **STREET RAILWAYS: Care of Streets: Failure to Comply With Ordinance: Liability to Individual.** Where under the provisions of a city ordinance, street railway companies are required to keep the street within a certain distance of the rails in repair, and to keep the surface of the street as near the top of the rails as practical, a negligent failure to comply with such ordinance will lay the company liable to an individual injured because of such failure.

6. **INSTRUCTIONS: Instruction Covering Issue Not Pleaded.**
In a suit against a street railway company, where the negligence complained of was the maintaining of an improper switch, it is reversible error to give an instruction which permitted a recovery on the grounds of failing to keep the street in repair.

7. ————: **Defining Terms.** Appellant cannot complain of a failure of the trial court to define the terms used in an instruction where it made no request of the court to have such terms defined.

8. ————: **Given at Request of One Defendant to the Prejudice of the Other.** Although an erroneous instruction may have been given at the instance of one of the defendants and not at the request of plaintiff, yet, if it operates to the prejudice of the other defendant the latter may complain, and the error, if material, may justify a reversal of the judgment.

Appeal from St. Louis City Circuit Court.—*Hon. Eugene McQuillin,* Judge.

REVERSED AND REMANDED.

*Glendy B. Arnold* for appellant; *Boyle & Priest* of counsel.

(1) There is no claim made that appellant had not the lawful right to maintain a switch at the place in question, and there being no evidence that the switch used was an unnecessarily dangerous obstruction, plaintiff made no case for the jury. Morie v. Transit Co., 116 Mo. App. 12; Randle v. Railroad, 65 Mo. 335. (2) The switch in question was maintained by authority of law and the consent of the city of St. Louis, and was therefore not a nuisance per se. Porter v. Railroad, 33 Mo. 128; State ex rel. v. Railroad, 206 Mo. 251; Lackland v. Railroad, 34 Mo. 275; Glaessner v. Railroad, 100 Mo. 514. (3) The mere fact that the switch was dangerous to travel in the street does not constitute it a nuisance. Morie v. Transit Co., 116 Mo. App. 27; Siebert v. Railroad, 188 Mo. 657. (4) Unless the danger was so great as to practically withdraw the thoroughfare from

public use, no redress will be granted for any injury caused by the switch. Brown v. Railroad, 137 Mo. 535. (5) The mere fact that a safer appliance could have been used does not render the appellant liable in this case because it was not required to use the safest and most improved switch known. It was bound only to use a reasonably safe appliance. Grattis v. Railroad, 153 Mo. 403. (6) The court erred in giving on behalf of the city of St. Louis, instructions marked "3 C." Because said instruction authorizes a verdict against appellant on a charge of negligence not laid in the petition. Heinzle v. Railroad, 182 Mo. 559; Waldhier v. Railroad, 71 Mo. 514.

*Robert L. McLaran* for respondent.

(1) The evidence showed that defendant had constructed and maintained a certain switch in a public street of the city of St. Louis, which was a dangerous obstruction to vehicles, traveling along such street, whereas defendant could have maintained and used another and much safer type of switch at such place. It was then for the jury to determine whether or not defendant-exercised reasonable care in maintaining a dangerous switch when it could have used a safer one. Morie v. Transit Co., 116 Mo. App. 12; 3 Elliot on Railroads, 154; Groves v. Railroad, 58 S. W. 508, 52 L. R. A. 448; Wiley v. Smith, 25 App. Div. (N. Y.) 351; Fitts v. Railroad, 59 Wis. 323; Schild v. Railroad, 133 N. Y. 446; Railroad v. Delesdernier, 84 Tex. 83; Goodrich v. Railroad, 103 Iowa 412. (2) The evidence showed that defendant permitted its switch to become more dangerous than it otherwise would have been by allowing the pavement of the street adjoining the switch to become sunken and depressed. It was for the jury to determine whether this constituted negligence. Girvelaud v. Railroad, 33 Mo. App. 458; 27 Am. and Eng. Ency. Law, 94; Railroad v. Medlenka, 17 Tex. Civ. App. 621; Groves v. Railroad, 58 S. W. 508. (3) The ac-

tion of the court in giving instruction marked "3 C" on behalf of the city of St. Louis is no cause for reversal of this case. The petition is broad enough to cover the issues presented by this instruction. R. S. 1909, sec. 1831; Railroad v. Bank, 212 Mo. 505; Sharp v. Railroad, 213 Mo. 517; Lee v. Railroad, 195 Mo. 400. (4) It was not error for the court to permit plaintiff to state the number and names of her children. Plaintiff was entitled to the assistance and advice of her husband in rearing her children, and her loss in this regard is a proper element of her damages. Jones v. Railroad, 178 Mo. 552; 4 Sutherland on Damages (3 Ed.) 3711.

GRAY, J.—Plaintiff instituted this suit in the circuit court of the city of St. Louis, on the 18th day of November, 1908, to recover damages alleged to have been sustained by her on account of the death of her husband, which the petition alleges to have been caused by the negligence of the appellant, a street railway company, and the city of St. Louis, in maintaining in Washington avenue, a public street in said city, at its intersection with Fourteenth street, a dangerous obstruction in the form of a switch, which was used by appellant in switching cars from its line on Washington avenue to its tracks in said Fourteenth street. The petition alleges that plaintiff's husband, while driving his wagon across said switch on the 17th day of August, 1908, was jolted off the seat into the street, striking his head with great force against the pavement, inflicting injuries from which he died.

The answer of the appellant is a general denial, coupled with a plea of contributory negligence; and also alleging that the switch used was the best and most approved device known, and was in common use, and used at the intersection of said streets as a necessary means to conduct its business under and by virtue of the laws of the state and the ordinances of the city of St. Louis.

The answer of the city was a general denial, and also a plea of contributory negligence, and alleging that the switch in use was the best and most approved device, and of the best pattern and construction known, and was in common and general use.

On trial before a jury, a verdict of $6500 was returned against the appellant, but the verdict was in favor of the city of St. Louis. The street car company appealed from the judgment to the St. Louis Court of Appeals, and the cause is in this court on transfer from the St. Louis court.

The appellant maintains that evidence of negligence not alleged in the petition was admitted by the court, and that the instructions also authorized a recovery for such negligence. In order that a fair understanding of this question may be had, we quote the following from the petition:

"For her cause of action plaintiff states that at all times hereinafter mentioned and for a long time prior thereto, defendant United Railways Company of St. Louis, owned, maintained, operated and controlled a line of street car tracks laid and constructed along Washington avenue, one of the public streets of the said city of St. Louis, said street and said tracks running from east to west; that said defendant United Railways Company of St. Louis, also owned, maintained, operated and controlled a certain other line of street car tracks laid and constructed along Fourteenth street, a public street of said city of St. Louis, running from north to south; that said Fourteenth street crosses said Washington avenue at about a right angle.

"Plaintiff further states that the said tracks of said defendant which are laid on Fourteenth street, are on that part of said street which is immediately south of said Washington avenue, and that as said tracks on Fourteenth street approach said Washington avenue, from the south, they make a curve or bend to the west

and run into and connect with said defendant's said tracks on Washington avenue.

"Plaintiff further states that the most western rail of the tracks on Fourteenth street connects with the most southern rail of the tracks on Washington avenue; that as said most western rail of the Fourteenth street tracks gradually curves toward and approaches the said most southern rail of the Washington avenue tracks, and as said most western rail is running in a westwardly direction, almost parallel to said Washington avenue tracks, defendant United Railways Company, has at all times herein mentioned, and for a long time prior thereto, owned, maintained and controlled an iron or steel guard or flange extending along the north side of said most western rail of the said Fourteenth street tract, for a distance of about four feet, said guard or flange having a heighth of about two inches above the top of the said rail and of the adjoining granite blocks with which said Washington avenue is paved; that on the north side of the said most southern rail of the said tracks on Washington avenue, said last named defendant, at all times herein mentioned and for a long time prior thereto, has owned, maintained and controlled another iron or steel guard or flange, which commences at a point about one and one-half or two feet east of the point of connection of the said western rail of the Fourteenth street tracks with said most southern rail of said Washington avenue tracks, and extends thence westwardly along the north side of said most southern rail for a distance of about five or six feet, said last mentioned guard or flange having a heighth of about two and one-half or three inches above the top of said rails, and of the adjoining granite pavement of said street; said two flanges overlapping one another to the extent of about one and one-half feet; said guards or flanges being about parallel to each other and about five inches apart.

"Plaintiff further states that at all times herein mentioned and for a long time prior thereto the pave-

ment of said Washington avenue, on both sides of and
adjoining the said rails at the places where said
flanges are constructed and maintained, as aforesaid,
had become and was out of repair in that it was worn,
sunken and depressed for a distance of about six inches
on each side of said rails, from the wear and tear inci-
dent to the usual and ordinary uses of said street.

"Plaintiff further states that the said iron or steel
guards or flanges, extending along the said rails as afore-
said, were at all times herein mentioned firmly attached
and fastened to said rails and said street, and were firm,
rigid and unyielding; that said guards or flanges, ex-
tending above said rails and said street as above set
forth, constituted dangerous obstructions in said public
street known as Washington avenue; that the wheels of
wagons and other ordinary vehicles of travel passing
along and across said street were liable and apt to
strike against said flanges or to become caught between
the same, greatly shaking, jarring and jolting such ve-
hicles and thereby endangering the lives and limbs of
persons riding therein; that said flanges are made more
dangerous by reason of the aforesaid worn, sunken and
depressed condition of the pavement of Washington
avenue.

"Plaintiff further states that said defendant Unit-
ed Railways Company of St. Louis, at all times herein
mentioned and for a long time prior thereto, had know-
ledge of the said dangerous condition caused by said
flanges as aforesaid, or by the exercise of reasonable
care would have had such knowledge; and that said de-
fendant wrongfully, unlawfully, improperly, unskill-
fully, negligently and carelessly kept and maintained
said flanges, and permitted them to remain in said
street, in said dangerous condition."

During the trial the defendants objected to testimony
tending to prove that the street immediately adjoining
the rails of the track was out of repair, caused by the
fact that the blocks used in paving had become worn,

for the reason that the petition did not charge that the injury was caused by the condition of the pavement. The trial court agreed with the defendants and suggested to plaintiff to amend the petition, so that the evidence would be proper. The record does not show any amendment was made. The court, however, permitted the testimony to go before the jury over the objections and exceptions of the defendants.

Washington avenue runs east and west, intersecting Fourteenth street at right angles. The appellant operated a double track street railway line in Washington avenue east and west of Fourteenth street, and a double track line in Fourteenth street connecting with the Washington avenue line. The Washington avenue line, at the time complained of was much used by the appellant and its cars were run at short intervals over each track thereon. No regular car service was maintained over the Fourteenth street tracks, but they were used solely for emergency and temporary purposes. There were no tracks on Fourteenth street north of Washington avenue, and as the Fourteenth street tracks approached Washington avenue, they curved westwardly and connected with the tracks on that avenue. The most westwardly rail on Fourteenth street connected with the most southwardly rail on Washington avenue, and at the place where the rails came together, defendant had installed and maintained a certain switch, known as an "unbroken main line switch." A part of that switch was a guard along the north side of the most southern rail on Washington avenue, and another guard or flange on the south side of said rail. The guard or flange on the north side of the rail was four feet long, and projected about two and one-half inches above the top of the rail. The flange or guard on the south side of the rail was six feet long and projected about two inches above the top of the rail.

The plaintiff's evidence tends to prove that on the 17th day of October, 1908, and about 1:30 in the after-

noon, plaintiff's husband was driving a stake wagon, drawn by two horses, along that portion of Washington avenue west of Fourteenth street. He was driving eastwardly and was on the north side of the south track. His wagon was loaded with election booths, and his horses were proceeding at a slow trot. The seat of the wagon, and upon which he was sitting at the time of the accident, was an unusually high seat, and may fairly be said that the testimony shows there was greater danger of being thrown from such a seat by a jolt of the wagon, than had the seat been an ordinary one.

The plaintiff's evidence further tends to show that as the deceased approached Fourteenth street, he endeavored to cross diagonally from the north side to the south side thereof, apparently with the intention of going south on Fourteenth street, and in making the crossing the right front wheel of his wagon struck the projecting flanges of the switch and as a result thereof he was jolted and thrown from the wagon on to the pavement of Washington avenue; that the wheels of the wagon passed over him and he received injuries from which he died.

It was the contention of the respondent that the defendants were guilty of negligence in maintaining at the point the "unbroken main line switch;" that it was a switch of unusual construction and was not in general use; that the tongue of the switch is set on top of the rail and the guard is also higher than the rails and higher than the guard of the ordinary switch. The plaintiff claimed that the street car company should have used a switch known as "tongue-mate" switch. In the "tongue-mate" switch, the tongue or the switch point is set down in a groove so that the top of the tongue is nearly level with the top of the rail; while the tongue of the "unbroken main line switch" is set on top of the rail, and the guard is some higher than the guard on the "tongue-mate" switch.

152 App.—34

The track lines on Fourteenth street were used for the purpose of switching on to them defective cars which might become defective while in use on the Washington avenue line; and if the travel on the Washington avenue line became obstructed, cars could be switched on to the Fourteenth street line and routed so that traffic would not be delayed.

The defendants contended that the switch in use was the one best adapted for the purposes; and also offered evidence tending to prove that the other switch had at one time been maintained at the point, and that complaint was made, on account of the noise made in passing over the switch, and it was taken up and the "unbroken main line switch" installed.

There is no dispute about the following facts: The "unbroken main line switch" left the track on Washington avenue in such condition that cars would run smoothly over the track at the point, without any jar or jolting caused by the running over a switch. In other words, in operating the Washington avenue line, the switch in no wise interfered with the wheels of the car, but the same ran smoothly over the track without interference; that in vehicles passing east and west over Washington avenue, there was less danger of injury than in the use of the "tongue-mate" switch, as the distance between the flange and the rail was sufficient to permit the wheels of the vehicle to pass through without interference; while in the "tongue-mate" switch, vehicles were likely to become fastened in the switch. The evidence also shows that in the use of the "tongue-mate" switch, it is necessary to have several joints, and that the car in passing over the same, makes considerable noise, and there is more or less jolting of the passengers, and in addition thereto, the car sometimes does not follow the main line, but is deflected onto the switch. On the other hand, the testimony shows that in crossing the street diagonally, the main line switch, on account

of extending above the rails, is more of an obstruction to the vehicle than the "tongue-mate" switch.

The defendant undertook to prove that the "unbroken main line switch" was necessary at the point where the accident occurred. But witnesses admitted that the "tongue-mate" switch was also in common use for such purposes. And it may be said that the evidence shows that the "tongue-mate" switch was gradually taking the place of the "unbroken main line switch" for the purposes for which they are used.

From the above statement of the facts, it is readily observed that the question of plaintiff's right to recover is a very close one. It may also be said from the evidence that if plaintiff was entitled to go to the jury from the fact that her husband was jolted from his seat while attempting to drive diagonally across the switch, that she would also have been entitled to go to the jury had the "tongue-mate" switch been used, and had his wheel caught in it while driving parallel with the car track on Washington avenue. If he had lost his life under the latter circumstances, the plaintiff's testimony would have tended to show that where the "unbroken main line switch" is used, there is no danger incurred in driving parallel with the switch; while the "tongue-mate" switch is used, the wheels of vehicles are liable to become caught in attempting to drive parallel and through the same.

There was another thing the defendant had a right to take into consideration, and that was the safety of its passengers. The undisputed evidence is that in the use of the "unbroken main line switch" there is absolutely no danger to passengers while the car is passing over the same; while there is some danger in the use of the "tongue-mate" switch, due to the fact that cars sometimes become deflected and one of the wheels leave the main track and cause the car to become derailed.

From the above, it must be admitted if plaintiff is entitled to go to the jury at all, it is on the theory that

the question is one about which the minds of reasonable men may differ. We will say, however, were it not for the fact that the testimony tends to prove that the "tongue-mate" switch at the time complained of, was much more in common use and was gradually taking the place of the "unbroken main line switch," we would not hesitate to hold that the plaintiff failed to make out a case. But we are not prepared to say that such evidence was not sufficient to support a verdict when the same was returned where the case was properly tried, and under instructions clearly defining the issues. We therefore hold the court did not err in submitting the case to the jury.

The respondent contends that the appellant did not show any right or license to occupy the streets of the city with its tracks, and therefore, the switch was a public nuisance and the defendant liable regardless of negligence. The petition does not present such an issue, but is drawn upon the theory that the appellant was rightfully on the streets. The question is settled in the case of Huff v. Railway Co., 213 Mo. 495, 111 S. W. 1145.

The appellant contends in this court that the judgment should be reversed and the cause remanded, because the court overruled its challenges to two jurors. The grounds of the challenge were that each of the jurors had served on a jury in said court within twelve months next preceding the trial of this case. The evidence shows that the jurors had been drawn for one week's service, and that during the week they had served on a jury, and the plaintiff's case was called during the same week.

On the 5th day of December of this year, in the case of Paula F. Blyston-Spencer v. this appellant, this court decided the point against the appellant, and we reaffirm our decision in that case.

During the trial, the court permitted the plaintiff to testify that she had five minor children, and appel-

lant contends that reversible error was committed thereby. This point is also ruled against appellant on the authority of Fisher v. Central Lead Co., 156 Mo. 479, 56 S. W. 1107, and cases therein cited.

It is next insisted by the appellant the mere fact that the switch was dangerous to travel in the street, did not make the appellant guilty of negligence in using the same, and appellant was not liable unless the danger was so great as to practically withdraw the thoroughfare from public use, and cites in support thereof, Morie v. Transit Co., 116 Mo. App. 12, 91 S. W. 962; Seibert v. Railroad Co., 188 Mo. 657, 87 S. W. 995; Brown v. Railroad Co., 137 Mo. 529, 38 S. W. 1099; Tate v. Railroad Co., 64 Mo. 149, and Grattis v. Railroad Co., 153 Mo. 380, 55 S. W. 108.

The case of Morie v. Transit Co. does not so hold. That case recognizes the general doctrine that every switch or street car track in a street more or less obstructs the use of the street, and the mere fact that it does so, does not render the railroad company or the city liable to damages. But that it is the duty of railway companies, in using the streets of a city for its tracks and switches, to exercise ordinary care and not to use an appliance that is dangerous, if by the exercise of ordinary care, a proper and safer appliance could be installed.

In Seibert v. Railroad Co. a different question was presented. In that case, under an ordinance of the city, passed by authority of the charter, the street car company had erected a safety gate at a point where its track crossed the public street. In the erection of the gate, certain obstructions were made in the street for the supports of the gate. The court held that the gate was there as a necessary device to save human lives, and therefore, the company had a right to use the part of the street for that purpose, and pedestrians using the street had to recognize that condition and govern themselves accordingly.

In the Brown and Tate cases, no question of negli-gence was presented. And in the case of Grattis v. Railroad Co. nothing can be found in support of appellant's position. If the danger was so great as to practically withdraw the thoroughfare from public use, then under no circumstances would the city or the street car company be authorized to occupy the streets, and the above decisions cited by the appellant so hold.

In this country the public streets are for the use of "whomsoever will," and no individual or corporation has the right to erect or maintain thereon obstructions so dangerous in themselves as to practically withdraw the street from public use. On the other hand, the operation of street cars and vehicles over the public streets is lawful and the operators thereof, so far as others using the streets are concerned, are only bound to exercise ordinary care to prevent injuries. [Huff v. Railroad, 213 Mo. 495, 111 S. W. 1145; Morie v. Transit Co., 116 Mo. App. 12, 91 S. W. 962; Grivelaude v. Railroad Co., 33 Mo. App. 458; Miller v. Railroad Co., 69 Atl. 636, 17 L. R. A. (N. S.) 978; Groves v. Railroad, 52 L. R. A. 448; note to Slater v. Railroad Co., 15 L. R. A. (N. S.) 840; Citizens Ry. & Light Co. v. Forepaugh & Sells Bros. Shows, 128 N. W. 357.]

It is next contended by appellant that it is not liable for the condition of the street immediately adjoining its rails. Under the charter of the city of St. Louis, street car companies are required to keep the street within a certain distance of their rails in repair, and to keep the surface of the street as near the top of the rails as practical. It is the contention of the appellant that it is liable to the city for a failure so to do, but not to any third person. Without discussing this question, we say the rule is otherwise, as shown by the following authorities: Huff v. Railroad, 213 Mo. 495, 111 S. W. 1145; Citizens Ry. Co. v. Forepaugh & Sells Bros. Shows, supra; Schuster v. Street Car Co., 102 N. Y. Supp. 1054; Doyle v. New York, 69 N. Y. Supp. 120;

Miller v. Ry. Co., supra; Hyde v. Boston, 71 N. E. 118; Zanesville v. Fannan, 53 Ohio St. 605, 53 Am. St. Rep. 664, 42 N. E. 703; Kincaid v. Walla Walla Traction Co., 106 Pac. 918.

The court in its instructions did not define the terms, "dangerous appliance," "dangerous obstruction," and "public nuisance." The appellant did not ask to have the terms defined, and therefore, it is not in position to complain in this court. [Harmon v. Donohoe, 153 Mo. 263, 54 S. W. 453; Dysart-Cook Mule Co. v. Reed, 114 Mo. App. 296, 89 S. W. 591.]

This brings us to the serious question in this case. In behalf of the plaintiff, the court gave an instruction fairly presenting the issues to the jury. As we have said, all the evidence of the plaintiff tended to prove that if the "tongue-mate" switch had been used instead of the one that was used, the accident would not have happened and the negligence of the appellant of which plaintiff complained, was the use of the improper switch. The instruction of the plaintiff limited the right to recover upon the finding by the jury that the defendant failed to exercise ordinary care in installing and using the switch in question when by the exercise of ordinary care, it could have used a safer one.

In behalf of the appellant, the court told the jury: "Although you find from the evidence that deceased came to his death by being jolted or thrown from his wagon through a combination of causes resulting from the worn, sunken and depressed condition of the pavement, together with his wagon coming in contact with the switch, if you further find from the evidence that said switch and appliance maintained at said point were of the type and character described in the foregoing instruction and were necessary for the purpose for which the same were used, your verdict must be for the defendant, United Railways Company."

We believe these two instructions fairly presented the act of negligence complained of in the petition, to

the jury. While the petition in one part states that the street was in such condition that the rails extended above the top of the pavement, yet when it alleges the cause of the injury, it is not charged to that defect, but specifically to the act of the appellant in maintaining the improper switch.

At the request of the city, and over the objections and exception of the appellant, the court gave the following instruction:

"The charter of the city of St. Louis imposes upon street railroad companies the duty to keep the street between the rails and to the extent of twelve inches outside of each rail of their tracks in the streets of said city in repair and as nearly on a level with such rails as practicable, and if you believe and find from the evidence that the defendant United Railways Company owned and maintained street railroad tracks and switch flanges in Washington avenue near Fourteenth street in said city on the 17th day of August, 1908, and that the street between its rails or within a distance of twelve inches outside of its rails at or about the point where its most southern rail on Washington avenue connected with its most western rail on Fourteenth street was then out of repair and not as nearly on a level with such rails as practicable and that such condition was known, or by the exercise of ordinary care might have been known to said United Railways Company in time to have repaired the same, and that Robert Asmus, while exercising ordinary care for his own safety, was injured by reason of his wagon colliding with the switch flanges at said point, and that such flange constituted a dangerous obstruction and a public nuisance, and that his wagon would not have collided therewith but for such condition of the street, then your verdict will be against said United Railways Company."

This instruction is erroneous from every point of view. It told the jury if the obstruction was a danger-

ous one and a public nuisance, and that the wagon
would not have collided with the same but for the con-
dition of the street, the verdict should be for the city,
but against the appellant. In other words, the instruc-
tion plainly told the jury that the city was under no
obligation to maintain its street in a reasonably safe
condition at the point where such duty to repair was
by law placed on the appellant. The reversible error
found in the instruction, however, is that it tells the
jury that if the death of plaintiff's husband was caused
by the condition of the street, then the railway com-
pany is liable. In other words, the instruction told the
jury that it was the duty of the railroad company to
keep the street between the rails, and to the extent of
twelve inches outside of each rail, in repair, and as
nearly on a level with the rails as practical, and if the
jury found that the railway company did not so keep
the street in repair, and that such condition was known
or by the exercise of ordinary care might have been
known by the company in time to have repaired the
same, and the plaintiff's husband was injured by rea-
son of his wagon colliding with the switch flange, and
that the switch flange constituted a dangerous obstruc-
tion and a public nuisance, and that his wagon would
not have collided therewith but for such condition of
the street, then the verdict should be against the rail-
way company.

As we have heretofore stated, the negligent act of
the defendant complained of was in maintaining an im-
proper switch, and not in permitting the street to be
out of repair. The instruction permitted a recovery on
a ground of negligence not complained of in the peti-
tion. It is not necessary to cite authorities to sustain
the proposition that where the petition alleges a specific
act of negligence, the right to recover must be limited
to the act alleged.

The respondent says that this instruction was not
given at its request, but at the request of the city of

St. Louis, and therefore, it is not responsible for the error. In Huff v. Railroad, supra, the court said: "While this instruction was asked by and given on behalf of the railway company, still it operated with equal prejudice against her and in favor of the city."

For the error in giving instruction No. C in behalf of the city of St. Louis, the judgment of the trial court will be reversed and the cause remanded. All concur.