**Emil Earl CORTE, Plaintiff-Respondent,**

v.

**ST. LOUIS PUBLIC SERVICE COMPANY, a Corporation, Defendant-Appellant.**

No. 49604.

Supreme Court of Missouri,

Division No. 2.

Sept. 9, 1963.

William M. Corrigan, V. James Ruddy, St. Louis, for appellant.

Barnhart & Sommers, Don B. Sommers, St. Louis, for respondent.

BARRETT, Commissioner.

On March 12, 1957, at 5:45 p. m. the plaintiff Emil Corte parked his automobile on Grand Avenue and proceeded on foot across the street to a drug store on the northeast corner of Natural Bridge Road and Grand Avenue. As he crossed the street, watching traffic, his right foot struck something and he fell on the pavement between the streetcar tracks and was injured. To recover damages for his resulting personal injuries Corte instituted this action against the City of St. Louis and the St. Louis Public Service Company. At the close of his evidence the plaintiff voluntarily dismissed the action against the city and a jury returned a verdict of $22,500 against the streetcar company. Four matters are briefed and argued upon this appeal by the streetcar company; one, that the trial court erred in not directing a verdict for the defendant company, two, that the court erred in admitting in evidence one section of the city charter, three, that the court erred in giving instruction 5, and four, that the verdict is excessive and should be reduced by substantial remittitur.

The contention that a verdict should have been directed is a three-pronged argument and inferentially involves the claim that the court erred in permitting counsel to read to the jury one section of the city charter. The defendant contends that there is no "substantial evidence" that defendant had either actual or constructive notice of the defect and that there is no evidence to support a finding that "plaintiff was caused to fall as the result of a defect in the pavement between the streetcar rails."

As to the latter point it is said that plaintiff did not know what caused his fall, that after he fell "he concluded that a defective portion of the pavement caused his fall." But the first point in this connection is that there is no evidence that defendant owed "any duty to the plaintiff at the time he fell." As stated, plaintiff introduced in evidence Article 19 of the charter entitled "Franchises," particularly Section 4, "Maintenance of Streets by Street Railroads" which requires street railroad companies "to keep the street between the rails and between the tracks and to the extent of at least 12 inches outside of each rail in perfect repair and as nearly on a level with such rails as practicable." It is said that this provision of the charter is only applicable to the relationship between the city and the defendant and does not set out any duty of the defendant to third parties. There was an ordinance, set forth in plaintiff's petition, requiring streetcar companies to maintain that portion of the street between their rails and it is urged that plaintiff's failure to introduce the applicable ordinance defeated its cause of action.

■ The appellant's argument with respect to this provision of the charter is somewhat ingenious but it is not necessary to a disposition of this appeal to consider its several rather interesting academic facets. Before the plaintiff closed his case counsel for the parties entered into this stipulation, "in lieu of proof" * * * (defendant) "is orally stipulating with me that the Public Service Company was on March 12, 1957, and prior thereto, operating streetcars on their tracks on North Grand Avenue at the place alleged in the petition, pursuant to the Charter in the City of St. Louis, that has been read into evidence." Under that stipulation there was, of course, no further obligation on the plaintiff to establish the defendant's duty to the plaintiff (Jenkins v. Wabash Ry. Co., (Mo.), 322 S.W.2d 788) and the defendant was, by reason of the charter, under a duty to maintain the area of the street between

its tracks. Asmus v. United Railways Co., 152 Mo.App. 521, 134 S.W. 92; Burow v. St. Louis Public Service Co., 339 Mo. 1092, 100 S.W.2d 269; Vanacek v. St. Louis Public Service Co., (Mo.), 358 S.W.2d 808, 811. After the initial objection to the admission of the ordinance, and after the case was dismissed as to the city, there were no motions to strike the charter provision and the defendant offered no instruction limiting the purpose and effect of the charter. Scott v. Missouri Ins. Co., (Mo.), 233 S.W.2d 660; State ex rel. Kansas City Public Service Co. v. Shain, 345 Mo. 543, 134 S.W.2d 58. And after the initial introduction of the charter the subject of maintaining the street in "perfect" repair was not again referred to. In plaintiff's argument as well as in his instructions the defendant was said to be under the duty "to exercise ordinary care to maintain the public street * * * in between the defendant's streetcar tracks in a reasonably safe condition for persons who walked over said portion of the street." As indicated, in the circumstances of this record, there was no error in the admission of the charter provision and the defendant was not entitled to a directed verdict for plaintiff's failure to prove its duty to the plaintiff. Huff v. St. Joseph Ry., Light, Heat & Power Co., 213 Mo. 495, 111 S.W. 1145.

■ In so far as pertinent to the objections made here, these were the questions and answers relating to his fall:

"A. Yes, sir, I looked around to see what I had fallen over.

"Q. What did you see?

"A. I saw cracks in the pavement.

"Q. Can you describe those cracks to us?

"A. Well, they appeared to be an inch to maybe three inches or so wide and there was a raised spot about two or three inches, something like that.

* * * * * *

"Q. When you looked at these cracks, what kind of appearance did they give?

"A. Well, they were—edges were rounded off— * * * There was a crack in the concrete. I guess—excuse me—there was a crack in the street and there was a raised spot there and I fell.

"Q. Now, Mr. Corte, you started to say something about the edges of the cracks.

"A. They were jagged.

"Q. Were there any worn spots on them?

"A. Worn spots, yes, sir."

In view of this testimony the case is not as if the plaintiff had not known what he had fallen over and had returned to the place of his injury two or three months later and "concluded" that some object he then found was the thing that caused him to fall (Davidson v. Missouri Orpheum Corp., 236 Mo.App. 1025, 161 S.W.2d 707), and his description of the cracked, raised concrete was not a mere conclusion. Lindquist v. S. S. Kresge Co., 345 Mo. 849, 136 S.W.2d 303. There were photographs of the cracks and the raised place in the pavement between the tracks. The plaintiff said they were "worn" and "jagged" and upon these circumstances it was for the jury to say whether the condition had existed for such length of time as to give the defendant actual or constructive knowledge of the defect and its hazard. Jensen v. Kansas City, 361 Mo. 967, 238 S.W.2d 305; Wormington v. City of Overland, (Mo. App.), 224 S.W.2d 590; Gelhot v. City of Excelsior Springs, Missouri, (Mo.App.), 277 S.W.2d 650. It is not claimed here that the defect was so slight or trivial that injury could not be anticipated, and as to danger, negligence and liability the circumstances were for the jury. Rittershouse v. City of Springfield, (Mo.) 319 S.W.2d 518; Genova v. Kansas City, (Mo.App.), 254 S.W.2d 38.

■ Against instruction 5 it is urged that it is erroneous in that "it assumed the essential element of whether or not the street was in a dangerous and not reasonably safe condition," there is no other objection to the instruction. Instruction 5 was the principal instruction and hypothesized the facts and the theory upon which plaintiff relied. To establish its claim of assumption of fact the appellant excerpts from the instruction two quotations: "said portion of the public street in between the defendant's streetcar tracks was in a dangerous and not reasonably safe condition" and "the aforesaid dangerous condition in the public street." Unfortunately these excerpts, extirpated from context, distort the matter. Hunt v. Kansas City, 345 Mo. 108, 111, 131 S.W.2d 514, 515. As urged, these two quotations are not preceded by "if you so find" or other language leaving or submitting the matter to the jury, however, there are six other "if you finds," and one or more "therebys" and "that therefores" and they are so interspersed throughout the instruction as to avoid the charge of assumption of fact. Kelly v. Kansas City Public Service Co., (Mo.), 335 S.W. 2d 159. It is not necessary to encumber this opinion with the whole instruction to demonstrate that the quotations are out of context and in any event, are not comparable to an instruction which said that defendant was "bound to keep its premises * * * in a reasonably safe condition for the use by plaintiff" (Trautloff v. Dannen Mills, Inc., (Mo.App.), 316 S.W.2d 866; or to the statement "have slowed down more than he did" thus assuming that he had slowed down, as in George v. Allen, 362 Mo. 971, 245 S.W.2d 848. Since assumption of fact is the only objection to the instruction it is sufficient to say that it is a rescript of instructions which were upheld against a number of objections in Pohl v. Kansas City, (Mo), 238 S.W.2d 405; Hunt v. Kansas City, supra, and Jensen v. Kansas City, supra.

■ As a matter of fact the essentially meritorious problem upon this appeal is

whether the verdict of $22,500 is excessive. After falling the plaintiff continued his trip, received first aid at the drug store, returned to his automobile, attended a meeting that evening and then went home. He had a headache, however, and there was a swelling in the back of his head. The next day he consulted a physician, X-rays were taken and rest prescribed but the headaches continued, there was double vision, blackouts and nausea and he returned to his family doctor and was again hospitalized for a few days. Finally he was referred to Dr. Smolik, a neurological surgeon. Dr. Smolik correctly diagnosed the plaintiff's injury and accompanying symptoms as a "subdural hematoma." The doctor drilled two holes, "posterior-parietal openings" between the size of a nickel and a quarter, in the back of his head, inserted tubes and drained the hematoma. The holes, of course, remain and are permanent though covered with "smooth fibrous tissue." But, admittedly, the headaches and all symptoms have disappeared. Corte was dismissed by Dr. Smolik on August 9, 1957, and has had no difficulty with his head since. On direct examination these were the questions and answers to and from the doctor: "Q. what was the progress of Mr. Corte, following? A. He did very well. Q. In your opinion, did you affect (sic) a complete cure of that hematoma? A. Yes, sir." As a result of his injuries plaintiff was off from work from March 12 to March 18, from March 22 to April 15, from April 29 to May 20 and from May 28 to August 12, 1957. There may have been a loss of earning of $1,877.02, the plaintiff in support of the verdict does not point to the special damages. His hospital bills totaled $662.30, nurses $100, his family doctor $103 and Dr. Smolik's bill was $750. Thus, there were special damages of approximately $3,500.

Needless to say, the court has not been cited to any comparable cases and research has revealed no instances of similar injuries and losses. The posterior-parietal openings, even though covered with "smooth fibrous tissue," are of course permanent, but there is no evidence from any source that plaintiff will suffer any pain or disability and there is no claim here that he is in greater danger of brain damage in the event of another head injury, as was the case in Hackett v. Wabash Railroad Co., (Mo.), 271 S.W.2d 573. The case nearest in point, the only one that brings into play the general rule of uniformity of verdicts, is Gooch v. Lake, (Mo.), 327 S.W.2d 132, decided in 1959. There, as summarized in the syllabus, a 20-year old athlete suffered contusion and laceration of left eye, multiple contusion of left thorax and left shoulder, comminuted fracture of left clavicle, moderately severe contusion of brain and fracture of basilar portion of skull. There the plaintiff said, "as of today, I have no permanent injury," there were special damages totaling $2,370.77, and the court reduced that part of the verdict referable to compensation for the injury, $12,629.23, $6,500. As indicated, the posterior-parietal openings are permanent but there is no proof of other or resulting disability and the doctrine of uniformity rather plainly indicates that this verdict is excessive by $8,500. Therefore, if plaintiff will, within 15 days, enter a remittitur of $8,500, the judgment will be affirmed as thus reduced; otherwise, the judgment will be reversed and the cause remanded.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.